152 T.C. No. 16

UNITED STATES TAX COURT

LINDA J. ROMANO-MURPHY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 27236-09L.                    Filed May 21, 2019.

On July 26, 2006, R (or the IRS) mailed a Letter 1153, Trust Fund Recovery Penalty Letter, to P, notifying her that she would be subject to the assessment of a penalty under I.R.C. sec. 6672(a). That section imposes a penalty on any person who is responsible for withholding amounts of federal tax and paying them over to the United States and who willfully fails to fulfill these obligations. The penalty is referred to as the trust-fund-recovery penalty.

In response to the Letter 1153, P sent the IRS a timely protest of the proposed assessment and a request for a conference with the IRS Office of Appeals. The IRS's Office of Appeals did not hold a conference with P. Nor did the IRS make a final administrative determination with respect to the protest.

---

[*]This Opinion supplements our previously filed opinion <u>Romano-Murphy v. Commissioner</u>, T.C. Memo. 2012-330, <u>vacated and remanded</u>, 816 F.3d 707 (11th Cir. 2016).

On Oct. 15, 2007, the IRS assessed the trust-fund-recovery penalty against P. Then the IRS engaged in actions to collect the penalty. In particular, it sent P a notice of intent to levy and filed a notice of lien on P's property. These actions triggered P's right to a collection-review hearing under I.R.C. sec. 6330. At this collection-review hearing, the Office of Appeals determined that P was liable for the trust-fund-recovery penalty. The Office of Appeals also determined to sustain the collection actions.

P petitioned the Tax Court for review of the determination of the Office of Appeals. We held that P was liable for the penalty. Romano-Murphy v. Commissioner, T.C. Memo. 2012-330, vacated and remanded, 816 F.3d 707 (11th Cir. 2016). We also determined that the IRS was not required to make a final administrative determination regarding the protest before assessing the penalty against P.

P appealed our decision to the U.S. Court of Appeals for the Eleventh Circuit. The Court of Appeals held that the IRS was required to make a final administrative determination regarding P's protest before assessing the penalty. Romano-Murphy v. Commissioner, 816 F.3d at 717. The Court of Appeals held that the source of this requirement is I.R.C. sec. 6672(b). I.R.C. sec. 6672(b)(1) provides that the trust-fund-recovery penalty cannot be imposed on a person until the IRS notifies that person that he or she will be subject to an assessment of the penalty. It is the IRS's practice to give this preliminary penalty notice using Letter 1153, the notice it used in this case. I.R.C. sec. 6672(b) alters the three-year period during which the IRS is entitled to assess the trust-fund-recovery penalty. It does so in two ways. First, under I.R.C. sec. 6672(b)(3)(A), the three-year period is held open for 90 days after the mailing of the preliminary penalty notice. Second, under I.R.C. sec. 6672(b)(3)(B), if the person makes a timely protest of the proposed assessment in response to the preliminary penalty notice, the three-year period is held open until the date that is 30 days after the IRS makes a final administrative determination with respect to the protest. The Court of Appeals held that I.R.C. sec. 6672(b)(3)(B) requires the

IRS to make a final administrative determination in response to a timely protest before it can assess the penalty. The requirement so identified by the Court of Appeals was violated in this case because the IRS assessed the penalty against P without making a final administrative determination.

The Court of Appeals remanded the case for us to determine what action, if any, should be taken to remedy the IRS's error in assessing the penalty against P before making a final administrative determination.

1. Held: The requirement identified by the Court of Appeals is one of the "requirements of applicable law or administrative procedure", compliance with which must be verified by the Office of Appeals in an I.R.C. sec. 6330 collection-review hearing.

2. Held, further, the assessment of the trust-fund-recovery penalty is invalid and we do not sustain the determination of the Office of Appeals.

Linda J. Romano-Murphy, pro se.

Kimberly A. Daigle and John T. Arthur, for respondent.

## CONTENTS

SUPPLEMENTAL OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1.    Relevant principles of federal tax procedure. . . . . . . . . . . . . . . . . . . . . . . . 21

a.    From the filing of the return to assessment . . . . . . . . . . . . . . . . . . . 21

b.    Collection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

c.    The trust-fund-recovery penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

d.    1998 collection-review provisions . . . . . . . . . . . . . . . . . . . . . . . . . 34

e.    Tax-refund litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

2.    Our analysis on remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

a.    The requirement identified by the Eleventh Circuit, that the IRS must make a final administrative determination before assessing the trust-fund-recovery penalty, should be considered a requirement of applicable law or administrative procedure that must be verified as part of a collection-review hearing. . . . . . . . . . . 40

b.    The assessment of the trust-fund-recovery penalty against Romano-Murphy is invalid, and the Office of Appeals erred in sustaining actions to collect the assessment. . . . . . . . . . . . . . . . . . . 51

c.    Our holding is consistent with the harmless-error principle. . . . . . . 55

d.    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

3.    Romano-Murphy's request for an injunction under section 6330(e)(1) . . . 76

4.    Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

SUPPLEMENTAL OPINION

MORRISON, Judge:  The Internal Revenue Service ("IRS") sent the petitioner, Linda J. Romano-Murphy, a notice that it would assess a section 6672 trust-fund-recovery penalty against her.[1]  The penalty related to the failure of Nurses PRN, LLC ("NPRN"), to withhold Federal Insurance Contributions Act ("FICA") taxes and income tax from its employees' wages for the second quarter of 2005.  Although Romano-Murphy timely protested the penalty administratively, the IRS did not make a final administrative determination regarding her protest.  Instead, the IRS assessed the penalty.  It then took actions to collect the penalty, i.e., a notice of proposed levy and a filing of a notice of lien.  These actions triggered Romano-Murphy's right to a collection-review hearing (also known as a collection-due-process hearing or a CDP hearing) with the Office of Appeals.  At the hearing she challenged her liability for the penalty.  The Office of Appeals determined that she was liable for the penalty and sustained the proposed levy and the filing of the notice of lien.  The Tax Court reviewed the determination of the Office of Appeals; we held that she was liable for the penalty.  Romano-Murphy v. Commissioner, T.C. Memo. 2012-330, at *107, vacated and remanded, 816 F.3d

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended.

707 (11th Cir. 2016). We also determined that the IRS was not required to make a final administrative determination regarding her protest before assessing the penalty. In the appeal of our decision, the U.S. Court of Appeals for the Eleventh Circuit held that section 6672(b)(3)(B) required the IRS to make a final administrative determination before assessing the penalty. Romano-Murphy v. Commissioner, 816 F.3d at 714. The Eleventh Circuit remanded the case for us to determine what corrective action should be taken to remedy the IRS's violation of this requirement. Id. at 721. On remand, we hold that the assessment is invalid and that the Office of Appeals abused its discretion in upholding the proposed levy and the filing of the notice of lien to collect the assessment. We do not sustain the determination of the Office of Appeals.

Background

Romano-Murphy was the chief operating officer and the corporate secretary of NPRN. NPRN was a nurse-staffing company.

On July 29, 2005, NPRN filed a Form 941, "Employer's Quarterly Federal Tax Return", for the second quarter of 2005. NPRN reported that $403,019.72 was the amount of its liability to the IRS for FICA and income tax that it was required to withhold from its employees' wages. FICA taxes and income tax must be withheld from wages by the employer and paid over to the United States. Secs.

3102(a), 3402(a)(1), 7501; Lee v. Commissioner, 144 T.C. 40, 46 (2015). These withholding obligations are among the types of taxes called trust-fund taxes. See Pollock v. Commissioner, 132 T.C. 21, 25 n.10 (2009).

On July 26, 2006, the IRS mailed Romano-Murphy a Letter 1153, "Trust Fund Recovery Penalty Letter". The letter stated that NPRN had failed to pay $346,732.38 of trust-fund taxes for the second quarter of 2005. The letter stated that the IRS proposed to assess that amount against Romano-Murphy as a trust-fund-recovery penalty under section 6672. The letter stated that she could appeal the proposed assessment by mailing a written protest to the IRS within 60 days along with a request for a conference with the Office of Appeals.

In the meantime, NPRN's operations had been taken over by another company, Nurses Onsite Corp. Romano-Murphy worked for the new company until August 7, 2006.

On September 6, 2006, Romano-Murphy wrote the IRS a letter appealing the proposed assessment of the penalty and requesting a conference with the Office of Appeals. The parties agree that this letter was a timely protest. The IRS did not take any action in response to the letter.

On December 27, 2006, Nurses Onsite Corp. went into bankruptcy.

On October 15, 2007, the IRS assessed the trust-fund-recovery penalty of $346,732.38 against Romano-Murphy for NPRN's unpaid trust-fund taxes for the second quarter of 2005. The IRS sent her a notice of the assessment with a demand for payment within 60 days of the assessment.

On August 25, 2008, the IRS served Romano-Murphy a notice that it proposed to levy to collect from her the trust-fund-recovery penalty for NPRN's trust-fund taxes for the second quarter of 2005. The record does not reveal what amount was reflected on this notice, if any.

On September 5, 2008, the IRS served Romano-Murphy with a notice that on that day it had filed a notice of lien to facilitate the collection from her of the trust-fund-recovery penalty for NPRN's trust-fund taxes for the second quarter of 2005. The notice stated that the amount the IRS sought to collect was $346,668.23. The record does not explain why this amount is slightly less than the $346,732.38 amount assessed on October 15, 2007.

On September 9, 2008, Romano-Murphy mailed the IRS a timely request for a collection-review hearing with the IRS's Office of Appeals. The request was timely as a response to both the notice of proposed levy and the notice of the filing of a notice of lien.

On September 12, 2008, the IRS received Romano-Murphy's request for a collection-review hearing.

On September 12, 2008, the IRS placed a "litigation freeze" notation in its records for Romano-Murphy's liability for the trust-fund-recovery penalty.

On February 24, 2009, the Office of Appeals held a face-to-face conference with Romano-Murphy. Romano-Murphy challenged her liability for the trust-fund-recovery penalty.

On October 29, 2009, the Office of Appeals mailed Romano-Murphy a letter attaching a Form 12257. The letter stated:

> Attached please find Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, and Waiver of Suspension of Levy Action discussed during our telephone conference of 10/28/09. Once reviewed, please sign and date and submit both pages of the form by **November 13, 2009**. If the Form 12257 is not received, a Notice of Determination will be issued.

We refer to the Form 12257 as the summary notice of determination. The summary notice of determination stated that, after a face-to-face hearing, the determination of the Office of Appeals was that the assessment of a trust-fund-recovery penalty was valid, that the Office of Appeals had verified that all requirements of applicable law and administrative procedure had been met, that collection of the assessment should proceed, that the proposed collection action

balanced the need for the efficient collection of taxes and the legitimate concern of Romano-Murphy that any collection action be no more intrusive than necessary, and that the notice of proposed levy and the filing of the notice of lien were sustained. In addition, the summary notice of determination had a section for Romano-Murphy to sign that stated: "I understand that IRC Sections 6320 and 6330 require the Office of Appeals to issue a Notice of Determination after a CDP Hearing. Those sections also allow me 30 days to file a lawsuit with the appropriate court if I disagree with Appeals' determination."

On November 17, 2009, Romano-Murphy filed a petition with the Tax Court attaching the summary notice of determination dated October 29, 2009.

On November 20, 2009, the Office of Appeals mailed a notice of determination to Romano-Murphy. We refer to the notice of determination as the final notice of determination. The final notice of determination stated that the notice of proposed levy and the filing of the notice of lien were sustained.

The parties have agreed that the Office of Appeals determined that the amount of the trust-fund-recovery penalty Romano-Murphy owed for the second quarter of 2005 was $346,732.38.

After a trial, the Tax Court issued a Memorandum Opinion. Romano-Murphy v. Commissioner, T.C. Memo. 2012-330. The Tax Court held that

Romano-Murphy is liable for the trust-fund-recovery penalty for the second quarter of 2005 in the same amount determined by the Office of Appeals-- $346,732.38. Id. at *107. The Tax Court decided to sustain the Office of Appeals' determination. The decision was entered December 13, 2012.

Romano-Murphy then moved for reconsideration of the Tax Court opinion and to vacate the decision. She argued that the October 15, 2007 IRS assessment of the penalty was invalid because the IRS failed to give her a hearing regarding her September 6, 2006 protest of the proposed assessment. The Tax Court denied her motion by order. The order stated that Romano-Murphy's motions were premised on the theory that the assessment was invalid because it was made before the IRS had made a final administrative determination. In the order, the Tax Court held that the IRS was not required by section 6672(b)(3) to delay assessment until it had made a final administrative determination with respect to a protest of a proposed assessment.

Romano-Murphy appealed the decision of the Tax Court to the U.S. Court of Appeals for the Eleventh Circuit.

On March 7, 2016, the Eleventh Circuit issued its opinion. Romano-Murphy v. Commissioner, 816 F.3d 707. The Eleventh Circuit explained that Romano-Murphy's argument on appeal was that the assessment of the penalty was

invalid because the IRS did not hold a hearing or make a final administrative determination before the assessment. Id. at 714. The government's appellate brief took the position that section 6672(b)(3) does not confer a right to a pre-assessment hearing or a pre-assessment final administrative determination. Instead, the government argued, the function of section 6672(b)(3) is to extend the period for the IRS to assess the penalty. The Eleventh Circuit held that the IRS erred in not making a pre-assessment determination of Romano-Murphy's section 6672 liability. Romano-Murphy v. Commissioner, 816 F.3d at 714. The Eleventh Circuit recognized that section 6672 "does not contain a subsection concerning a pre-assessment hearing or determination of the liability". Romano-Murphy v. Commissioner, 816 F.3d at 715. However, the Eleventh Circuit stated, section 6672(b)(3) "does presuppose that there will be a pre-assessment determination at some point if a taxpayer files a timely protest." Romano-Murphy v. Commissioner, 816 F.3d at 715. It also stated that section 6672(b)(3), in particular subparagraph (B), "contemplates that there will be a pre-assessment determination of liability and notice thereof to the taxpayer if a timely protest has been filed." Romano-Murphy v. Commissioner, 816 F.3d at 716. It concluded that "Romano-Murphy was entitled to a pre-assessment determination of her § 6672 liability." Id. at 714.

The Eleventh Circuit also stated that even if section 6672 were assumed to be "ambiguous", regulations (section 301.7430-3(d), Examples (5) and (7), Proced. & Admin. Regs.) require the Office of Appeals to make a pre-assessment determination of section 6672 liability when a timely protest is filed. Romano-Murphy v. Commissioner, 816 F.3d at 716-718. The Eleventh Circuit opinion held that these regulations and another regulation, section 301.6320-1(e)(4), Example (3), Proced. & Admin. Regs., "require the IRS to make a pre-assessment determination (though not necessarily through the provision of a hearing) about a taxpayer's § 6672(a) liability when timely protest is made." Romano-Murphy v. Commissioner, 816 F.3d at 717.

The Eleventh Circuit also stated that its interpretation of section 6672(b)(3) was consistent with section 601.106(a)(1)(iv), Statement of Procedural Rules. Romano-Murphy v. Commissioner, 816 F.3d at 718-719. Section 601.106(a)(1)(iv), Statement of Procedural Rules, provides that the taxpayer may appeal certain penalties to the Office of Appeals after assessment. According to the statement, the trust-fund-recovery penalty is not such a penalty "because the taxpayer has the opportunity to appeal this penalty prior to assessment." Id.

The Eleventh Circuit also stated that its interpretation of section 6672(b)(3) was consistent with certain parts of the Internal Revenue Manual. Romano-Murphy v. Commissioner, 816 F.3d at 719.

The Eleventh Circuit opinion next discussed the potential consequences of its holding that the IRS had "violated § 6672(b)" in failing to make the required pre-assessment determination of liability following Romano-Murphy's timely protest. Id. The Eleventh Circuit observed that the Tax Court had not yet in this case addressed whether the IRS's error required invalidation of any agency action. Id. The Eleventh Circuit opinion stated that Romano-Murphy had alleged that she was prejudiced by the IRS's failure in that

- she had to pay more interest (because interest accrues from the date of assessment),

- she was unable to obtain information from NPRN's online system because of the IRS's delay in making a determination, and

- the filing of the lien notice harmed her credit.

Id. at 720. The Eleventh Circuit opinion stated that the Tax Court "may need to determine the existence, and extent, of these harms before figuring out whether the IRS' error was harmless." Id.

The Eleventh Circuit opinion also stated that "aside from the specific prejudice claimed by Ms. Romano-Murphy, there is the difficult question of what happens when the IRS violates a statutory and regulatory command that exists for the benefit of the taxpayer." Id. The Eleventh Circuit opinion stated that there are "reasonable arguments on both sides of that question." Id. In discussing considerations against imposing a remedy against the IRS for violating the requirement it identified, the Eleventh Circuit recognized that Romano-Murphy "eventually did receive a pre-levy opportunity to be heard" when she was given a collection-review hearing in 2009. Romano-Murphy v. Commissioner, 816 F.3d at 720. The Eleventh Circuit opinion also explained that in "other contexts, where an agency's failure to follow its own process and procedures does not 'implicate[ ] basic due process rights,' we have reviewed that failure for harmless error." Id. (citing Ala. Hosp. Ass'n v. Beasley, 702 F.2d 955, 958 nn. 6 & 8 (11th Cir. 1983), R.R. Concrete Crosstie Corp. v. R.R. Ret. Bd., 709 F.2d 1404, 1407 n.3 (11th Cir. 1983), and Howell v. United States, 164 F.3d 523, 526 (10th Cir. 1998)).

The Eleventh Circuit opinion then discussed considerations in favor of imposing a remedy against the IRS for failure to comply with the requirement it had identified. Romano-Murphy v. Commissioner, 816 F.3d at 720-721. The Eleventh Circuit discussed the following considerations.

- The principle that executive agencies must comply with procedural requirements imposed by statute. Id. at 720 (citing Gonzales v. Reno, 212 F.3d 1338, 1349 (11th Cir. 2000)).

- The principle that executive agencies must respect their own procedural rules and regulations. Id. (citing Gonzales, 212 F.3d at 1349).

- The principle that the IRS may not treat two similarly situated taxpayers differently. Id. (citing Powell v. United States, 945 F.2d 374, 378 (11th Cir. 1991)).

- The principle that assessments can be rendered invalid by IRS error. Id. (citing Phila. & Reading Corp. v. Beck, 676 F.2d 1159, 1164 (7th Cir. 1982)).

- A case in which the court had refused to presume that an agency error was harmless. Id. (citing U.S. Steel Corp. v. EPA, 595 F.2d 207, 215 (5th Cir. 1979)).

The Eleventh Circuit remanded the case so that the Tax Court "can address whether the IRS' error, under the circumstances, is harmless or requires setting aside the 2007 assessment (or some lesser form of corrective action)." Id. at 721.

As the Eleventh Circuit opinion explained, the parties had addressed the questions of harmless error and potential remedies in their appellate briefs. Id. at 719-720.

On March 7, 2016, the Eleventh Circuit entered a judgment consisting of its opinion. The Eleventh Circuit did not issue an order shortening or extending the time for filing a petition for panel rehearing. No petition for panel rehearing was filed.

On April 29, 2016, the appellate mandate issued.

On June 6, 2016, the Tax Court ordered the parties to "file written reports stating their views as to the actions this Court should take on remand."

On June 15, 2016, the IRS removed the "litigation freeze" notation it had made in its records on September 12, 2008.

In its report on remand, the IRS makes four points:

First, the IRS contends that the assessment was valid because the IRS complied with section 6672(b)(1) and (2). Recall that on July 26, 2006, the IRS sent Romano-Murphy a preliminary penalty notice, i.e., the Letter 1153. On September 6, 2006, Romano-Murphy sent the IRS a timely protest. On October 15, 2007, the IRS assessed the penalty--and issued a notice of the assessment and demand for its payment. The IRS observes that section 6672(b)(1) and (2) requires that the preliminary penalty notice precede the notice of assessment by 60

days. The IRS further states that because notice of assessment "is not given until the assessment is made", section 6672(b)(1) and (2) prohibits it from assessing the trust-fund-recovery penalty until 60 days after it issued the preliminary penalty notice (i.e., the Letter 1153).[2] Because the date of assessment, October 15, 2007, was more than 60 days after the date of the preliminary penalty notice, July 26, 2006, the IRS says the assessment satisfied section 6672(b)(1) and (2).

Second, the IRS contends that although the Eleventh Circuit opinion held that the final administrative determination with respect to a protest must be made before assessment, this does not mean that an assessment without such a determination is invalid. As the IRS explains its argument: "Congress did not specifically prohibit assessment until after a final administrative determination was made after a protest." The IRS observes that section 6213(a) prohibits an

---

[2]The text of the IRS's argument is:

Because the notice of the making of an assessment and demand for payment, as required by section 6303, is not given until the assessment has been made,[1] section[ ] 6672(b)(1) and (2) prohibit[s] the assessment of the TFRP for 60 days after giving the notice of proposed assessment.

[1]Normally, assessment of a federal tax and mailing of notice and demand for payment of the assessed tax balance due occur simultaneously, as part of an automated process. See IRM 3.17.63.2.4.9.

assessment before a notice of deficiency is issued and allows a court to enjoin such an assessment. The absence of an analogous provision in section 6672 with respect to an assessment of a trust-fund-recovery penalty before the IRS has made a final administrative determination with respect to a protest, the IRS suggests, means that Congress did not intend to prohibit such an assessment.

Third, the IRS says that Romano-Murphy did get an opportunity to contest the penalty in the collection-review hearing and the subsequent Tax Court proceeding. Therefore, the IRS argues, she "has not been prejudiced by the procedural errors that respondent committed by not providing her with a pre-assessment hearing and determination."

Fourth, the IRS states that if it were to abate the assessment in this case for failure to provide a pre-assessment determination, the period for making a new assessment would still be open.

In her report on remand, Romano-Murphy states that the Court should order two things. First, it should abate the assessment made on October 17, 2007. Second, it should withdraw the notice of lien filed September 5, 2008. Her remand report also contains many wide-ranging arguments. She argues that the Eleventh Circuit opinion held that she had a right to a pre-assessment hearing with the Office of Appeals and that she did not receive this hearing. She argues that

had the IRS offered her such a hearing, it might not have been necessary for the IRS to file a notice of lien against her. She contends that a pre-assessment hearing would have occurred earlier than her collection-review hearing (her face-to-face conference, which was part of the collection-review hearing, took place February 24, 2009) and she therefore would have had better evidence at a pre-assessment hearing. In particular, she contends that she would have been able to produce documents showing that NPRN directed its second-quarter-2005 employment tax payments to trust-fund taxes. She also contends that she would have been able to produce a letter from an attorney directing a separate $1.6 million payment to trust-fund taxes. She argues that she was harmed by the filing of the notice of lien through increased interest charges, refusals of banks to lend to her, and limitations on access to apartment housing.

Neither Romano-Murphy nor the IRS urges the Court to hold an evidentiary hearing on remand, and we did not hold such a hearing.

On May 8, 2017, the IRS issued to Romano-Murphy a notice of intent to levy on her property to collect the second-quarter-2005 trust-fund-recovery penalty.

On May 15, 2017, Romano-Murphy filed a motion asking the Court to restrain the IRS from collection activities. Upon receiving a copy of Romano-

Murphy's motion, the IRS requested that the Office of Appeals re-establish the "litigation freeze" notation.

By May 24, 2017, the IRS's internal records showed that the "litigation freeze" notation had been re-established.

Discussion

Our holding, which is set forth infra part 2, relies on principles of federal tax procedure that are explained generally infra part 1.

1.    Relevant principles of federal tax procedure

a.    From the filing of the return to assessment

Taxpayers are required to file returns reporting their tax liabilities, sec. 6011(a), and are required to pay their tax liabilities when their returns are due, sec. 6151(a).  There are monetary penalties for failing to file a return, sec. 6651(a)(1), for filing a return reporting the incorrect amount of tax, see sec. 6662(a), and for failing to pay the correct amount of tax (whether the correct tax is reported on the return, sec. 6651(a)(2), or is not reported, sec. 6651(a)(3)).  Many taxpayers file their returns, report their correct tax liabilities on these returns, and pay these liabilities to the federal government.  Some taxpayers do not.  It falls to the IRS to collect the unpaid taxes.

To administratively collect taxes that are not paid, the IRS must as a general rule first assess the taxes. See sec. 6502(a) (assessment is precondition for imposing levy); sec. 6322 (assessment results in lien); Jordan v. Commissioner, 134 T.C. 1, 12 (2010), supplemented by T.C. Memo. 2011-243; Gerald A. Kafka & Rita A. Cavanagh, 1 Litigation of Federal Civil Tax Controversies, para. 3.01, at 3-2 (2016) ("No tax may be collected by the Service until after it has been assessed."); 1 Laurence F. Casey, Federal Tax Practice, sec. 2.01, at 2-3 to 2-4 (2017). Assessment consists of the IRS's making an entry in its books of the amount of the taxpayer's liability. Sec. 6203. As a general rule, the IRS cannot assess the tax more than three years after the return was filed. Sec. 6501(a).[3] If a return is filed and three years pass without an assessment, the IRS cannot collect the tax administratively. Sec. 6501(a); see Ewing v. United States, 914 F.2d 499, 503-504 (4th Cir. 1990).

Taxes reported on returns are assessed by the IRS summarily. Sec. 6201(a)(1); Murray v. Commissioner, 24 F.3d 901, 903 (7th Cir. 1994). There is usually no lag between the filing of a return and assessment. However, in

---

[3]Sec. 6501(a) provides: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." If no return is filed, the IRS can assess tax at "any time". Sec. 6501(c)(3).

instances in which the IRS assesses an amount of tax greater than the amount reported on a return, there is a period between the filing of the return and that assessment. During this period, the activities conducted by the IRS include (1) selecting the return for examination; (2) examining the return; (3) handling an administrative appeal--if the taxpayer is dissatisfied with the results of the examination; and (4) in the case of income tax, issuing a notice of deficiency to the taxpayer entitling the taxpayer to a pre-assessment determination by the Tax Court. We describe these activities in greater detail below.

The IRS selects which returns to examine "by computerized mathematical techniques * * * developed by the Service and by personnel who manually identify returns for examination." Michael I. Saltzman & Leslie Book, IRS Practice & Procedure, para. 8.03[1], at 8-17 (rev. 2d ed. 2017). Once selected, returns are examined through correspondence, office interviews, or field examinations. Id. para. 8.01[2], at 8-8. After examining the return, the examiner may accept the return as filed or may assert there is a deficiency. Id. para. 8.01[2], at 8-9. A deficiency is generally the excess of the correct tax over the tax reported on the return. See sec. 6211(a). If the taxpayer agrees with the examiner's assertion that there is a deficiency, the taxpayer signs a form agreeing to the immediate assessment of the deficiency. Saltzman & Book, supra, para. 8.01[2], at 8-9. If

the taxpayer does not agree, the IRS typically sends a letter giving the taxpayer 30 days to request a conference with the IRS's Office of Appeals. Id.; Jeffrey E. Quijano & Rodney P. Mock, "I.R.C. § 7430 Attorneys' Fees: Navigating Section 7430 and a Call for the Final Act", 15 Fordham J. Corp. & Fin. L. 731, 737 (2010). In some instances the 30-day letter requires the taxpayer to send a protest, which is a written document explaining why the taxpayer is contesting the examiner's findings. Saltzman & Book, supra, para. 9.05, at 9-60 (citing section 601.106(a)(1)(ii), Statement of Procedural Rules). As a general rule, the three-year period for assessment continues to run during the examination and Appeals processes.[4] There are exceptions to this general rule. One exception, which is

_____

[4]Michael I. Saltzman & Leslie Book, IRS Practice & Procedure, para. 8.08[4], at 8-70 (rev. 2d ed. 2017), explains that for this reason the taxpayer and the IRS often agree to extend the period (as is permitted by sec. 6501(c)(4)):

> Extensions of the period of limitations are common in the examination of a return, so it is necessary for the representative to know the Code provisions and the Service's procedures in requesting extensions, as well as the taxpayer's options where a request is made. Section 6501(c)(4) provides that the time within which assessment of any tax other than an estate tax must be made may be extended for any period agreed on in writing by the taxpayer and the Service, as long as the agreement is entered into before expiration of the assessment period. No assessment of a tax may be made after the period of limitations on assessment has expired, even if the tax was determined before expiration of the statute. Therefore, to ensure a timely assessment, the Service does not permit a taxpayer to appeal an

(continued...)

applicable to the trust-fund-recovery penalty, is found in section 6672(b)(3). This exception is discussed later in this Opinion.

Another exception is the deficiency procedure. The deficiency procedure is a pre-assessment procedure mandated by statute for income tax (and for certain other taxes, but not employment taxes or the trust-fund-recovery penalty). This procedure is set forth in sections 6211-6215. Section 6212(a) authorizes the IRS to mail the taxpayer a notice of deficiency informing the taxpayer that the IRS has determined there is a deficiency. Section 6213(a) authorizes the taxpayer, within 90 days after the notice of deficiency is mailed, to file a petition with the Tax Court asking the Court to redetermine the deficiency. Section 6214(a) authorizes the Tax Court to redetermine the deficiency.

Three statutory provisions adjust the procedure for assessing tax to accommodate the deficiency procedure. First, section 6213(a) bars the IRS from assessing a deficiency until it has issued a notice of deficiency to the taxpayer. This bar on assessing the deficiency remains in place until 90 days after the notice of deficiency is mailed unless the taxpayer files a petition for redetermination of

[4](...continued)
adjustment in tax from the district to the Appeals Office unless there is sufficient time for both the appeal and assessment. An extension thus serves the interests of both the Service and the taxpayer by avoiding revenue loss and permitting administrative appeal.

the deficiency in the Tax Court, in which event the bar on assessment remains in place until the decision of the Tax Court becomes final.  Id.[5]  Second, section 6503(a)(1) suspends the running of the three-year period for assessing tax while the IRS is barred from assessing the deficiency, and, if the taxpayer files a petition for redetermination of the deficiency, continues to suspend the running of the period of assessment until the 60th day after the decision of the Tax Court becomes final.[6]  Third, section 6215(a) provides that the amount of the deficiency

---

[5]Sec. 6213(a) provides:

[N]o assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day * * * period * * * [the 90-day period beginning with the mailing of the notice of deficiency], nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. * * *

Additionally, sec. 6213(a) provides that "the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court".

[6]Sec. 6503(a)(1) provides:

The running of the period of limitations provided in section 6501 * * * on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and certain excise taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for

(continued...)

as redetermined by the Tax Court "shall be assessed and shall be paid upon notice and demand from the Secretary." The deficiency procedure has been described by a treatise as follows:

> Under deficiency procedures, the Service is required to (1) give the taxpayer notice of the proposed assessment [citing section 6212], and (2) wait the statutorily prescribed period of 90 days (150 days for taxpayers outside the country) before assessing the tax and taking collection action [citing section 6213]. If the Service attempts to collect a deficiency without sending the required statutory notice, or during the ninety-day waiting period, the taxpayer may request that a district court or the Tax Court enjoin the Service from assessing and collecting the assessed tax [citing section 7421]. If the taxpayer chooses to file a petition in the Tax Court, no collection action may be taken until the Tax Court has reached a final decision. Thus, a deficiency assessment subject to such restrictions may not be assessed until the taxpayer has had an opportunity for Tax Court review before payment of any additional tax. Once the Tax Court has entered its decision that a deficiency exists, the amount of the deficiency may be assessed [citing section 6215]. At the expiration of the ninety-day period following the sending of a notice of deficiency, a tax determined to be due from a taxpayer may be assessed. Once assessment has been made, the taxpayer is debarred from Tax Court review and must make payment of assessed tax.

Saltzman & Book, supra, para. 10.01[2][b], at 10-6.

---

[6](...continued)
the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of a deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

b.      Collection

Thus far, we have described the procedure up to the point of assessment.

We now discuss the procedure after assessment. As explained above, the IRS

makes an assessment by making an entry in its books that the taxpayer owes tax.

Sec. 6203. Section 6303(a) requires that, contemporaneously with the assessment

of the tax, the IRS notify the person liable for the unpaid tax and demand

payment.[7] If the person liable for the tax fails to pay the tax after being notified of

the assessment, a lien is imposed in favor of the government on all of that person's

property by operation of section 6321. Section 6322 provides that such a lien

arises when the assessment is made. The combined effect of sections 6321 and

6322 is that an assessment is a precondition to a lien. See United States v.

Potemken, 841 F.2d 97, 102 (4th Cir. 1988) (assessment is a prerequisite to the

creation of a lien); Principal Life Ins. Co. v. United States, 95 Fed. Cl. 786, 791

(2010) ("Whereas the IRS may enforce a taxpayer's tax obligations in various

ways, its broadest enforcement powers, such as the use of liens and levies, are

available only when an assessment is made." (citing section 6322 and other

authorities)). A lien does not transfer custody of the property to the federal

---

[7]In particular, sec. 6303(a) requires the IRS to make the notice and demand as soon as practicable after the assessment (and not more than 60 days after the assessment).

government. William D. Elliott, Federal Tax Collections, Liens, and Levies, para. 9.05, at 9-13 (2d ed. 2014); Saltzman & Book, supra, para. 14A.04, at 14A-30 to 14A-31. Rather, the lien establishes the priority of the government's right to property over the rights of the taxpayer and of certain types of competing creditors. See Superpumper, Inc. v. Nerland Oil, Inc. (In re Nerland Oil, Inc.), 303 F.3d 911, 915, 917 (8th Cir. 2002) (federal tax lien based on assessments made in 1993 and 1994 took priority over claim of private creditor whose lien was perfected only in 1996). The lien is not valid against four types of persons (purchasers, security-interest holders, mechanic's lienholders, and judgment-lien creditors) until the IRS files a notice of lien. Sec. 6323(a). The IRS files the notice of lien with the office of the clerk or recorder of the county in which the property is located or with another governmental office. Sec. 6323(f). The notice of lien is a public document. Elliott, supra, para. 10.01, at 10-2. It warns subsequent purchasers or lenders that those persons' interests in the property will have less priority than the interest of the IRS. Id.; Saltzman & Book, supra, para. 14A.04, at 14A-31. Section 6323(j)(1) provides that the IRS may "withdraw" a filed notice of lien in various circumstances, one of which is if the IRS determines that "the filing of such notice was premature or otherwise not in accordance with administrative procedures". Sec. 6323(j)(1)(A). The IRS withdraws a notice of

lien by filing a notice of lien withdrawal with the same governmental office with which it filed the notice of lien. Sec. 6323(j)(1). The withdrawn notice of lien is treated as if it had never been filed. Id.

In addition to these lien powers, the IRS also has the power to collect tax by levy. Sec. 6331(a). Section 6331(a) provides that generally if the taxpayer fails to pay the tax within 10 days of the section 6303(a) notice and demand, the IRS may collect the tax by levy. However, as described infra part 1.d, section 6330(a)(1) generally prohibits the IRS from levying until it sends the taxpayer a notice of the taxpayer's right to request a collection-review hearing and, if the taxpayer requests the hearing, while the hearing is pending. See sec. 6330(e)(1). In general, the period within which the IRS can make a levy ends 10 years after assessment. Sec. 6502(a).

c.    The trust-fund-recovery penalty

An employer is required to withhold from wages amounts for (1) the employee's share of FICA tax and (2) the employee's income tax. Sec. 3102(a) (FICA tax); sec. 3402(a)(1) (income tax).[8] The withheld taxes are required to be held in trust for the government until the employer pays the amounts to the

---

[8]FICA taxes consist of two components:  the Social-Security tax and the Medicare tax. Sec. 3101(a) and (b); see Gerstenbluth v. Credit Suisse Sec. (U.S.A.) LLC, 728 F.3d 139, 143 (2d Cir. 2013).

government.  Sec. 7501; <u>Lee v. Commissioner</u>, 144 T.C. at 46.  Thus, the withheld

taxes are referred to as "trust fund taxes".  <u>Pollock v. Commissioner</u>, 132 T.C. at

25 n.10.  The employer is liable to the government for the payment of amounts

required to be withheld.  Sec. 3102(b) (FICA tax); sec. 3403 (income tax).  If an

employer fails to withhold the amounts required to be withheld or withholds the

amounts but fails to pay them to the IRS, a person responsible for the failure (such

as a corporate officer of the employer) may be personally liable for a penalty under

section 6672(a).  <u>See</u> <u>Newsome v. United States</u>, 431 F.2d 742, 745 (5th Cir.

1970).  This penalty is sometimes referred to as the trust-fund-recovery penalty.

<u>See</u> <u>Weber v. Commissioner</u>, 138 T.C. 348, 357 (2012).

The trust-fund-recovery penalty is assessed and collected in the same

manner as a tax.  Sec. 6671(a).  Thus, the deadline for assessing a tax, generally

three years from the filing of the return, <u>see</u> sec. 6501(a), also controls the

assessment of the trust-fund-recovery penalty, <u>Stallard v. United States</u>, 12 F.3d

489, 493 (5th Cir. 1994).  For the trust-fund-recovery penalty, the three years

starts with the filing of Form 941.  <u>Jones v. United States</u>, 60 F.3d 584, 589-590

(9th Cir. 1995).  The Form 941 is filed by an employer to report its employment-

tax obligations for the quarter, including the trust-fund taxes.  Secs. 31.6011(a)-

4(a)(1), 31.6011(a)-1, Employment Tax Regs.  The Form 941 is generally due one

month after the end of the quarter. Sec. 31.6071(a)-1(a)(1), Employment Tax

Regs. For purposes of the deadline for assessing tax, if the Form 941 is filed on or

before April 15 of the year after the quarter in question, then the Form 941 is

deemed filed on that April 15. Sec. 6501(b)(2). Thus, in such a situation the

deadline for assessing the trust-fund-recovery penalty is three years after April 15

of the year after the relevant Form 941 is filed. See, e.g., Jarrett v. Commissioner,

T.C. Memo. 2018-73, at *45.

In 1996, Congress amended section 6672 to add section 6672(b). Taxpayer Bill of Rights 2, Pub. L. No. 104-168, sec. 901(a), 110 Stat. at 1465-1466 (1996).[9] After another amendment in 1998,[10] section 6672(b) provides:

SEC. 6672(b). Preliminary Notice Requirement.--

(1) In general.--No penalty shall be imposed under subsection (a) unless the Secretary [of Treasury] notifies the taxpayer[11] in writing by mail to an address as determined

---

[9]The legislative history of the enactment of sec. 6672(b) in 1996 stated:

Reasons for change. Some employees may not be fully aware of their personal liability under section 6672 for the failure to pay over trust fund taxes. The Committee believes that IRS could make additional efforts to assist the public in understanding its responsibilities. Explanation of provision. The bill requires the IRS to issue a notice to an individual the IRS had determined to be a responsible person with respect to unpaid trust fund taxes at least 60 days prior to issuing a notice and demand for the penalty. The statute of limitations shall not expire before the date 90 days after the date on which the notice was mailed. The provision does not apply if the Secretary finds that the collection of the penalty is in jeopardy.

H.R. Rept. No. 104-506, at 39-40 (1996), 1996-3 C.B. 49, 87-88.

[10]The 1998 amendment permitted the IRS to personally deliver the notice instead of mailing it. IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 3307, 112 Stat. at 744.

[11]The "taxpayer" referred to in sec. 6672(b) is the person against whom the IRS seeks to impose the liability of sec. 6672(a), not the employer who is liable for the underlying trust-fund tax. See Lee v. Commissioner, 144 T.C. 40, 46-47 (2015).

under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty.

(2) Timing of notice.--The mailing of the notice described in paragraph (1) (or, in the case of such a notice delivered in person, such delivery) shall precede any notice and demand of any penalty under subsection (a) by at least 60 days.

(3) Statute of limitations.--If a notice described in paragraph (1) with respect to any penalty is mailed or delivered in person before the expiration of the period provided by section 6501 for the assessment of such penalty (determined without regard to this paragraph), the period provided by such section for the assessment of such penalty shall not expire before the later of--

(A) the date 90 days after the date on which such notice was mailed or delivered in person, or

(B) if there is a timely protest of the proposed assessment, the date 30 days after the Secretary makes a final administrative determination with respect to such protest.

(4) Exception for jeopardy.--This subsection shall not apply if the Secretary finds that the collection of the penalty is in jeopardy.

d.      1998 collection-review provisions

In 1998, Congress amended the Internal Revenue Code to bar the IRS from levying on a person's property unless the IRS notifies the person of a right to request a collection-review hearing at the IRS's Office of Appeals.  Internal Revenue Service Restructuring Act of 1998, Pub. L. No. 105-206, sec. 3401(b),

112 Stat. at 747-748 (enacting section 6330(a)(1), (b)(1)). The bar on the levy ordinarily continues while the hearing, if requested, is pending. Sec. 6330(e)(1). The IRS must give the notification of the right to the hearing not less than 30 days before the day of the levy. Sec. 6330(a)(1) and (2). Section 6330(c) sets forth rules about what should be done at the hearing. Section 6330(c)(1) requires the Appeals officer to "obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met." The caselaw that interprets this provision has concluded that among the requirements that must be verified are: (1) the requirement (in section 6213(a)) that a notice of deficiency be issued before assessment of an income-tax deficiency, see Freije v. Commissioner, 125 T.C. 14, 36 (2005), and (2) the requirement (in section 6672(b)(1) and (2) and section 6303) that the IRS send a preliminary penalty notice before assessing the trust-fund-recovery penalty, see Lee v. Commissioner, 144 T.C. at 49. This caselaw is discussed in greater detail infra part 2.a. Section 6330(c)(2)(A) provides that the taxpayer may raise at the hearing any relevant issue related to the unpaid tax or the proposed levy, including spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives (including an installment agreement or an offer-in-compromise). Section 6330(c)(2)(B) provides that the taxpayer "may also raise at

the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Section 6330(c)(3) provides that the determination after the hearing must consider the verification presented under section 6330(c)(1), the issues raised under section 6330(c)(2), and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."

As explained above, a person may challenge the existence or amount of the underlying tax liability at a collection-review hearing. Sec. 6330(c)(2)(B). If the levy is intended to collect the trust-fund-recovery penalty, then the person may challenge the existence or amount of the trust-fund-recovery penalty. See Mason v. Commissioner, 132 T.C. 301, 321 (2009). As explained above, in order for a challenge to the existence or amount of the underlying tax liability to be considered by the Office of Appeals in a collection-review hearing, section 6330(c)(2)(B) requires the person not to have had a prior opportunity to challenge the liability for the penalty. By regulation, an opportunity to challenge the underlying tax liability includes "a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."

Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. An example in the regulation provides that if, after the IRS assesses a trust-fund-recovery penalty, the IRS offers the person the opportunity for a conference with the Office of Appeals at which the person would have the opportunity to dispute the assessed liability, and the person declines the opportunity to participate in such a conference, then the person is precluded from challenging the existence or amount of the liability. Sec. 301.6330-1(e)(4), Example (3), Proced. & Admin. Regs.; see also sec. 301.6320-1(e)(4), Example (3), Proced. & Admin. Regs. (identical example regarding lien hearing).

The 1998 amendments also require the IRS to offer a collection-review hearing after it files a notice of lien. Sec. 6320. The collection-review hearing after a lien-notice filing is similar to the collection-review hearing held before the imposition of a levy, except that the reference in section 6330(c)(2)(A) to the proposed levy is read as a reference to the lien. Sec. 6320(c); see Thompson v. Commissioner, 140 T.C. 173, 178 (2013).

After the Office of Appeals has made its determination in a collection-review proceeding, the taxpayer can petition the Tax Court for review of the determination. Sec. 6330(d)(1). In the resulting judicial proceeding, the Tax Court has the authority to review the determination of the Office of Appeals. Sec.

6330(d)(1). As part of this review, the Tax Court considers challenges by the taxpayer to the existence or amount of the underlying tax liability (including the trust-fund-recovery penalty) if the taxpayer properly raised those challenges at the collection-review hearing with the Office of Appeals. Sec. 6330(c)(2)(B); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; Mason v. Commissioner, 132 T.C. at 321.

e.  Tax-refund litigation

Besides deficiency cases and collection-review cases, there are other means by which liability for a trust-fund-recovery penalty can come before a court. The original way in which a taxpayer litigated his or her tax liability with the IRS was to file a suit for a refund. See Harold Dubroff & Brant J. Hellwig, The United States Tax Court: An Historical Analysis 29-37 (2d ed. 2014). This procedure still exists. To file a refund suit, the taxpayer must first pay the tax and file a refund claim with the IRS. Sec. 7422(a) (timely refund claim required); sec. 6511(a) (rules for filing claim, including payment requirement); Flora v. United States, 362 U.S. 145, 177 (1960). If the IRS denies the claim or does not act on the claim within six months, the taxpayer can then file suit in the U.S. District Court or the U.S. Court of Federal Claims. 28 U.S.C. sec. 1346(a)(1) (2018) (conferring jurisdiction on U.S. District Court over suits for refunds of federal

taxes or federal tax penalties); 28 U.S.C. sec. 1491(a)(1) (2018) (conferring jurisdiction on U.S. Court of Federal Claims over claims against the federal government under federal statutes).

The trust-fund-recovery penalty can be contested through this refund-suit procedure. For example, if the Office of Appeals considers and rejects a person's protest in response to a Letter 1153, the person can bring a tax-refund suit through the procedure described. See Harris v. United States, 175 F.3d 1318, 1319 (11th Cir. 1999); Bishay v. Commissioner, T.C. Memo. 2015-105, at *17 n.9. To meet the requirement that the amount must be paid to file suit, the person need not pay the entire amount of the trust-fund-recovery penalty. Weber v. Commissioner, 138 T.C. at 363 n.12. The person need only pay the amount for one employee for one calendar quarter. Id.

2.  Our analysis on remand

The Eleventh Circuit opinion is binding in this remand proceeding under the "mandate rule", which is an aspect of the law-of-case doctrine. Pelletier v. Zweifel, 987 F.2d 716, 718 (11th Cir. 1993).[12] The error identified by the

---

[12]Furthermore, because the Eleventh Circuit opinion is a published opinion, in Tax Court cases for which appellate venue would be the Eleventh Circuit and for which the opinion is "squarely in point" we would follow that opinion. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir.

(continued...)

Eleventh Circuit opinion is that the IRS failed to satisfy the requirement that it make a final administrative determination with respect to a timely filed protest before assessing the trust-fund-recovery penalty. Romano-Murphy v. Commissioner, 816 F.3d at 714. Below, we explain that the requirement identified by the Eleventh Circuit opinion should be considered a "requirement of any applicable law" within the meaning of section 6330(c)(1), see infra part 2.a, and that the IRS's failure to meet this requirement means that the assessment is invalid and that the Office of Appeals erred in upholding actions to collect the assessment, see infra part 2.b.

      a.     The requirement identified by the Eleventh Circuit opinion, that the IRS must make a final administrative determination before assessing the trust-fund-recovery penalty, should be considered a requirement of applicable law or administrative procedure that must be verified as part of a collection-review hearing.

In this case we are reviewing the determination of the IRS Office of Appeals after a collection-review hearing. See sec. 6330(d)(1); see also sec. 6320(c). The conduct of the Office of Appeals in handling a collection-review hearing is governed by section 6330(c). See also sec. 6320(c). Section 6330(c) requires the Office of Appeals to obtain various verifications at the hearing: "In

[12](...continued)
1971); cf. Bennett Land Co. (A Wash. Corp.) v. Commissioner, 70 T.C. 904, 907 n.3 (1978) (stating that an unpublished appellate opinion is not binding).

the case of any hearing conducted under this section--(1) * * * The appeals officer shall at the hearing obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met." Section 6330(c)(3) requires the Office of Appeals to consider these verifications in making its determination after the hearing:  "The determination by an appeals officer under this subsection shall take into consideration--(A) the verification presented under paragraph (1)".  The statute itself does not identify the specific "requirements of any applicable law or administrative procedure" that must be verified under section 6330(c)(1).  However, caselaw interpreting section 6330(c)(1) has identified certain requirements that must be verified.  For purposes of this remand, there are two specific such requirements that are relevant by analogy.

One verification requirement is that a notice of deficiency be issued.  See sec. 6213(a).  Two cases that consider this requirement are informative:  Freije v. Commissioner, 125 T.C. at 36, and Hoyle v. Commissioner, 131 T.C. 197, 200 (2008), supplemented by 136 T.C. 463 (2011).  In Freije v. Commissioner, 125 T.C. at 34-35, the IRS failed to issue a notice of deficiency before assessing a deficiency for tax year 1999.  The taxpayers had filed an income-tax return showing a tax due of $12,507.  Id. at 32.  The IRS determined that the correct tax

was $15,265. Id. It assessed the $15,265 first without mailing a notice of

deficiency to the taxpayer. Although the IRS sent the taxpayer a notice that the

correct tax was $15,265, the IRS conceded that this notice was not a notice of

deficiency, but a notice that the amount of tax on the return was incorrect purely

because of a mathematical or clerical error. Id.; see also sec. 6213(b)(1). We held

that some of the adjustments in the notice were not related to mathematical or

clerical errors, and we held that by assessing tax related to these adjustments

without first mailing a notice of deficiency, the IRS had "violated section 6213(a),

which generally prohibits the assessment of a deficiency without affording the

taxpayer the opportunity to petition for redetermination of the deficiency in this

Court." Freije v. Commissioner, 125 T.C. at 35. We characterized the IRS's

failure to issue a notice of deficiency as "fatal" to the relevant part of the

assessment. Id. We rejected the IRS's argument that the remedy for the failure

should be for the Tax Court itself, sitting in review of the Office of Appeals, to

determine the correctness of the deficiency assessment under section

6330(c)(2)(B) (allowing a taxpayer to raise at a collection-review hearing

challenges to the existence or amount of the underlying tax liability if the taxpayer

did not receive any statutory notice of deficiency or otherwise have an opportunity

to dispute the liability). We stated:

> Under the interpretation of section 6330(c)(2)(B) urged by respondent, de novo review in a section 6330 proceeding could substitute for the taxpayer's right to a deficiency proceeding under sections 6211-6216. A taxpayer's rights in the former proceeding are more circumscribed than in the latter. Moreover, such a construction would conflict with other provisions of section 6330. Section 6330(c)(1) and (3) requires, in connection with the hearing provided under section 6330, that the Appeals officer obtain verification "that the requirements of any applicable law or administrative procedure have been met" and that he take such verification into account in determining whether the levy should proceed. One requirement of applicable law is the mandate of section 6213 that, except in certain cases, including those involving termination or jeopardy assessments, an opportunity for preassessment judicial review precede the assessment or collection of any deficiency, generally defined to encompass income tax in excess of the amount reported on a return. Thus, the requirement of section 6330(c)(1) that the Appeals officer verify compliance with applicable law cannot be reconciled with an interpretation of section 6330(c)(2)(B) that allows the Commissioner to avoid compliance with section 6213(a).

> We accordingly hold that petitioner's opportunity in a section 6330 proceeding to dispute the underlying tax liability does not cure an assessment made in derogation of his right under section 6213(a) to a deficiency proceeding. [Fn. ref. omitted.]

Freije v. Commissioner, 125 T.C. at 36. Freije was a collection-review case triggered by a notice of proposed levy (as opposed to the filing of a notice of lien). Id. at 19. As a result of the IRS's failure to issue a notice of deficiency before assessing the relevant portion of the deficiency, we held that the levy to collect the deficiency "may not proceed" and that assessment of that portion was "invalid." Id. at 37.

In Hoyle v. Commissioner, 131 T.C. at 198, the taxpayer filed an income-tax return for tax year 1993. It was disputed whether the IRS mailed a notice of deficiency. Id. at 200. The IRS alleged that it did mail a notice of deficiency and that the mailing took place in March 1996. Id. at 203. In August 1996, the IRS assessed the deficiency. Id. at 198. In 2002 the IRS notified the taxpayer that it had filed a notice of lien to collect the assessment. Id. at 199. This notification triggered the taxpayer's right to request a collection-review hearing. See sec. 6320(b)(1). The taxpayer requested such a hearing. Hoyle v. Commissioner, 131 T.C. at 199. After conducting the hearing the Office of Appeals determined that the IRS had sent the notice of deficiency. Id. at 203. The Office of Appeals upheld the filing of the lien notice. Id. at 199. However, the Tax Court, in reviewing the Office of Appeals' determination, found insufficient documentation in the administrative record to conclude that the notice of deficiency had been sent. Id. at 204. Therefore, the Tax Court stated, it was "unable to ascertain the basis for the Appeals officer's verification that all requirements of applicable law were met." Id. at 205. The Tax Court remanded the case to the Office of Appeals for it to "clarify the record as to what the Appeals officer relied upon in determining that the notice of deficiency was properly sent to petitioner." Id. The Tax Court explained the consequences if the Appeals Office failed to verify that

the notice of deficiency was sent. Id. The assessment would be "invalid"; "no lien would have arisen with respect to that tax liability"; "collection could not proceed"; and "the determination to proceed with collection was error as a matter of law." Id.

Another requirement that must be verified under section 6330(c)(1) is that the section 6672(b) preliminary penalty notice be given before the assessment of a trust-fund-recovery penalty. Sec. 6303; Lee v. Commissioner, 144 T.C. at 46-47 ("[T]he Service must give the responsible person notice of the proposed assessment of the trust fund recovery penalty at least 60 days before assessing the penalty[.]" (citing section 6672(b))); see also S. Rept. No. 105-174, at 66 (1998), 1998-3 C.B. 537, 602. In Lee v. Commissioner, 144 T.C. at 50, a collection-review case, the IRS assessed a trust-fund-recovery penalty. It was disputed whether the IRS had given the person a Letter 1153 (the preliminary penalty notice) before assessment. Id. We held that the requirement of pre-assessment notice was "a requirement of law and administrative procedure". Id. at 49.[13] We

---

[13]We stated:

[A]ssessment of the trust fund recovery penalties in the instant case requires prior notice to petitioner. Sec. 6672(b). Because the Service uses Letter 1153 to provide the required notice, the proper issuance of the Letter 1153 to petitioner is a requirement of law and

(continued...)

concluded that the summary-judgment papers in that case did not establish that a

Letter 1153 had been given. Id. at 50. Therefore, we denied the motion for

summary judgment by the IRS, which had sought a determination by the Court

that the Office of Appeals had verified that the requirements of any applicable law

or administrative procedure had been met. Id. at 51. Lee involved both a notice of

proposed levy and a notice of the filing of a lien notice. Id. at 41. In Lee we did

not reach the issue of what the remedy would be for the failure of the IRS to issue

a Letter 1153. The importance of Lee for our purposes is that it establishes that

the requirement that a preliminary penalty notice be given before assessment is a

verification matter.

The requirement identified by the Eleventh Circuit opinion is that the IRS

make a final administrative determination that the person is liable for the trust-

fund-recovery penalty (if that person makes a timely protest) before it can assess

the penalty. Romano-Murphy v. Commissioner, 816 F.3d at 714, 716, 721.[14] The

_____

[13](...continued)
administrative procedure whose execution the Appeals officer must
verify.

Lee v. Commissioner, 144 T.C. at 49 (citation omitted).

[14]As described above, the first argument the IRS made in its remand report
was that it had satisfied sec. 6672(b)(1) and (2), which requires the IRS to give the
(continued...)

IRS takes the position that--despite the Eleventh Circuit's holding--an assessment can be made before a final administrative determination. The IRS says: "Congress did not specifically prohibit assessment until after a final administrative determination was made after a protest".[15] We disagree with the IRS's analysis of the Eleventh Circuit opinion. The Eleventh Circuit opinion held that the IRS must make a determination before it makes the assessment. Id. at 716. It said that "the IRS must make a pre-assessment determination of liability for taxpayers who have filed timely protests." Id.; see also id. at 719 (holding that the IRS violated section 6672 by "failing to make a pre-assessment determination of liability following Ms. Romano-Murphy's timely protest"). To say that the IRS must make a determination before it makes an assessment is the same thing as saying that the

---

[14](...continued)
preliminary penalty notice. It is true that the IRS met this notice requirement. It issued the preliminary penalty notice on July 26, 2006. It assessed the penalty later, on October 15, 2007. That the IRS complied with the notice requirement of sec. 6672(b)(1) and (2) is irrelevant to our task on remand. The Eleventh Circuit opinion held that there is a separate requirement--found in sec. 6672(b)(3)--that the IRS make a final administrative determination with respect to a timely protest before it can assess the penalty. Romano-Murphy v. Commissioner, 816 F.3d at 716. The Eleventh Circuit opinion held that the IRS violated this requirement. Id. at 719.

[15]This is the second argument the IRS made in its remand report.

IRS cannot make an assessment before it makes a determination. We reject the IRS's position described above.

The no-assessment-before-determination requirement identified by the Eleventh Circuit opinion should be considered one of the "requirements" that must be verified under section 6330(c)(1). We draw an analogy to the requirement that the IRS must mail a notice of deficiency before it assesses an income-tax deficiency. This requirement is found in section 6213(a). In Freije we held that this requirement was one of the requirements the Office of Appeals must verify under section 6330(c)(1). Freije v. Commissioner, 125 T.C. at 36 ("One requirement of applicable law is the mandate of section 6213 that * * * an opportunity for pre-assessment judicial review precede the assessment or collection of any deficiency[.]"). The Eleventh Circuit opinion held that the IRS must make a final administrative determination regarding a timely filed protest before it assesses the trust-fund-recovery penalty. Romano-Murphy v. Commissioner, 816 F.3d at 714, 716. According to that opinion, this requirement is found in section 6672(b)(3). Romano-Murphy v. Commissioner, 816 F.3d at 716. The opinion referred to this requirement as a "statutory * * * command". Id. at 720. Similarly, section 6213(a) is a statutory command.

Also analogous is the requirement of section 6672(b)(1) and (2) that the IRS notify a person of an impending assessment of a trust-fund-recovery penalty. As we held in Lee v. Commissioner, 144 T.C. at 49, this requirement is "a requirement of law and administrative procedure whose execution the Appeals officer must verify." The requirement can be analogized to the requirement, identified by the Eleventh Circuit opinion, that the IRS make a final administrative determination with respect to a timely protest before assessing the trust-fund-recovery penalty.

More generally we have explained that one of the requirements that must be verified is that a "proper assessment" was made. Id. at 48; see also Ron Lykins, Inc. v. Commissioner, 133 T.C. 87, 97 (2009) (holding that one of the "legal and procedural requirements" that an Appeals officer must verify under section 6330(c)(1) is "that a valid assessment was made"). Under the Eleventh Circuit opinion, an assessment of a trust-fund-recovery penalty without a final administrative determination with respect to a timely protest is not a "proper assessment".

In conclusion, the requirement identified by the Eleventh Circuit opinion, that a final administrative determination in response to a timely protest precede the assessment of the trust-fund-recovery penalty, should be considered "a

requirement of any law and administrative procedure" within the meaning of section 6330(c)(2).

In the Eleventh Circuit's view, this requirement is found in the unambiguous wording of section 6672. That the Eleventh Circuit considered section 6672 unambiguous is evidenced by its statement later in the opinion that even if section 6672 were assumed to be ambiguous, certain regulations (sections 301.7430-3(d), Examples (5) and (7), and 301.6320-1(e)(4), Example (3), Proced. & Admin. Regs.) require the Office of Appeals to make a pre-assessment determination of trust-fund-recovery-penalty liability when a timely protest is filed. Romano-Murphy v. Commissioner, 816 F.3d at 716-718.

The Eleventh Circuit opinion held that section 6672(b)(3)--even without considering any regulations--established that the IRS must make a final administrative determination with respect to a timely protest before assessing the trust-fund-recovery penalty. Romano-Murphy v. Commissioner, 816 F.3d at 716. That section 6672(b)(3) established this requirement is sufficient for our conclusion that it is a "requirement[ ] of any applicable law or administrative procedure" within the meaning of section 6330(c)(1).

b. The assessment of the trust-fund-recovery penalty against Romano-Murphy is invalid, and the Office of Appeals erred in upholding actions to collect the assessment.

We now address the significance of the IRS's failure to make a final administrative determination with respect to Romano-Murphy's protest of the trust-fund-recovery penalty before it assessed the penalty. Because it is apparent that the requirement of making a pre-assessment determination was not met--not merely that the Office of Appeals neglected to verify whether the requirement was met--there is no reason for us to remand the case to the Office of Appeals to verify whether the requirement was met. Cf. Peterson v. Commissioner, T.C. Memo. 2016-17, at *7-*8 (remanding case to Office of Appeals for it to conduct verification where (1) Office of Appeals had originally failed to properly verify that notice of deficiency had been mailed and (2) Tax Court thought it possible that notice of deficiency had been mailed). Rather, the appropriate disposition of this case is for us to (1) hold that the assessment is invalid and (2) not sustain the Office of Appeals' determination to uphold the proposed levy and the filing of a notice of lien. The Eleventh Circuit opinion held that a final administrative determination in response to a timely protest is a precondition for an assessment. Romano-Murphy v. Commissioner, 816 F.3d at 714-719. An assessment without the required final administrative determination is invalid, just as an assessment

without the required notice of deficiency is invalid. See Hoyle v. Commissioner, 131 T.C. at 205; Freije v. Commissioner, 125 T.C. at 36-37. When an assessment is invalid for lack of the required notice of deficiency, it is an abuse of discretion for the Office of Appeals to uphold a proposed levy to collect the assessment, Freije v. Commissioner, 125 T.C. at 37, or to uphold a filing of a notice of lien to collect the assessment, Hoyle v. Commissioner, 131 T.C. at 205; see also Buffano v. Commissioner, T.C. Memo. 2016-122, at *8 (holding an assessment invalid for lack of mailing of notice of deficiency, and not sustaining Office of Appeals' determination to uphold (1) proposed levy and (2) filing of notice of lien). By analogy, it was an abuse of discretion for the Office of Appeals to uphold a proposed levy and filing of notice of lien to collect from Romano-Murphy the assessed trust-fund-recovery penalty.

The IRS argues that the requirement of section 6213(a)--that no assessment of an income-tax deficiency be made before the notice of deficiency is mailed --is distinguishable from the requirement that the Eleventh Circuit opinion held to be imposed by section 6672(b)(3)--that no assessment of the trust-fund-recovery penalty can be made before the final administrative determination is made with respect to a timely protest. These two requirements are different, in the IRS's view, because the requirement of section 6213(a) is enforced by a rule, also found

in section 6213(a), allowing the taxpayer to file suit to enjoin the making of an assessment during the time the assessment is prohibited. In this way the IRS would distinguish Freije v. Commissioner, 125 T.C. at 35-37, in which we held that an assessment of income tax without a notice of deficiency was invalid and actions to collect the assessment could not proceed. The IRS is correct that the section 6213(a) injunction provision has no counterpart in section 6672(b)(3); that is, section 6672(b)(3) does not supply an injunction remedy under which a person can enjoin the IRS from assessing the trust-fund-recovery penalty if it has not made a final administrative determination. However, Freije did not rely on the section 6213(a) injunction provision in concluding that the assessment was invalid and the actions to collect the assessment should not proceed. It relied instead on the provision in section 6213(a) that bars the IRS from assessing tax until it has issued a notice of deficiency. Freije v. Commissioner, 125 T.C. at 35-36. The Eleventh Circuit's opinion interprets section 6672(b)(3) as imposing an analogous rule--that there can be no assessment until a final administrative determination is made in response to a timely filed protest. Romano-Murphy v. Commissioner, 816 F.3d at 716.

The idea that an improperly timed assessment could somehow still be valid and collectible is inconsistent with the Internal Revenue Code provisions

governing assessment and collection. Assessment opens the door to administrative collection: It is a condition precedent to administrative collection. See sec. 6502(a) (assessment a precondition for imposing a levy); sec. 6322 (assessment results in a lien); Jordan v. Commissioner, 134 T.C. at 12; Kafka & Cavanagh, supra, para. 3.01, at 3-2 ("No tax may be collected by the Service until after it has been assessed."); Casey, supra, sec. 2.01, at 2-3 to 2-4. The timing of assessment also determines when the IRS must stop collecting tax: The IRS generally has 10 years from the date of assessment to collect the tax.[16] Sec. 6502(a). In other verification cases involving mistimed assessment (Freije and Hoyle), we declared the assessment invalid without considering whether the taxpayer was specifically harmed by the timing error. It was enough in these

---

[16]Bryan T. Camp, "The Failure of Adversarial Process in the Administrative State", 84 Ind. L.J. 57, 62 (2009), explains the significance of the timing of the assessment:

> An assessment marks the end of one process--tax determination--and the beginning of another--administrative tax collection. A proper assessment enables the tax lien created by § 6321 to arise. It allows the IRS to begin seizing taxpayer property under its levy authority in § 6331. Finally, and most critically, a proper assessment opens up the § 6502 collection period, which gives the IRS a whopping ten years to collect the tax administratively. The corollary is that if no proper assessment is made within the applicable assessment limitations period in § 6501 (generally three years) the liability itself is extinguished. The assessment limitations period acts as a statute of repose. [Fn. ref. omitted.]

cases, and it is enough here, that the IRS made an assessment in a sequence other than that permitted by Congress.

c.        Our holding is consistent with the harmless-error principle.

Our conclusion that the assessment of the penalty against Romano-Murphy is invalid and that the collection actions we have identified should be halted is consistent with general principles of law regarding harmless error.  An example of the harmless-error rule is 5 U.S.C. sec. 706 (2018), a provision of the Administrative Procedure Act that generally provides that, when a court reviews an agency action, "due account shall be taken of the rule of prejudicial error."  See Ala. Hosp. Ass'n, 702 F.2d at 958.  It has been said that the rule of harmless error means the following:  If an agency's mistake that does not affect the outcome, and if the error was not prejudicial, it would be senseless for a court to vacate and remand to the agency for reconsideration.  See PDK Labs. Inc. v. U.S. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004).  In Ala. Hosp. Ass'n, 702 F.2d at 956, the State of Alabama developed a plan to reimburse hospitals in the State for the services they provide under the Medicaid program.  The plan was intended to comply with a federal statute that required states to develop plans to reimburse hospitals for the reasonable costs of Medicaid services and to have those plans approved by the Department of Health and Human Services (HHS).

Id. at 956 & n.2.  HHS approved the Alabama plan under this statutory standard.

Id. at 956.  But shortly before HHS approved the plan, Congress had altered the

statutory standard used to assess reimbursement rates devised by the states.  Id. at

956-957.  Under the new standard, states were not required to reimburse hospitals

for all reasonable costs, only "efficient cost[s]".  Id. at 957-958.  The Alabama

Hospital Association filed suit against HHS, contending that HHS's approval of

the State of Alabama plan was invalid because the approval had evaluated the plan

under the old statutory standard.  Id.  The court held that the reasonable-cost

provision in the old statute was more generous (i.e., allowed greater

reimbursements) than the new standard.  Id. at 958.  Therefore, the court held,

HHS would not have reached a different result under the new standard.  Id. at 959.

The court held that HHS's alleged error in failing to adequately apply the new

standard was a harmless error.  Id. at 960.  The court cited 5 U.S.C. sec. 706

(2018) (providing that a court reviewing an agency action shall take "due account

* * * of the rule of prejudicial error") as an example of the harmless-error rule.

Ala. Hosp. Ass'n, 702 F.2d at 958.  The court stated that most courts formulate the

harmless-error rule as follows:

> [P]rocedural errors are deemed harmless unless the court has a
> "substantial doubt" that the agency would not have reached the result
> it did.  See, e.g., Consolidated Gas Supply, supra [606 F.2d 323, 328-

329 (D.C. Cir. 1979)]; Kurzon v. U.S. Postal Service, 539 F.2d 788, 796 (1st Cir. 1976). Cf. U.S. Steel Corp., supra [595 F.2d at 215] (harmless error rule applies only if error "clearly" did not affect outcome of agency's decision); Arnold v. Morton, 529 F.2d 1101, 1105 (9th Cir. 1976) (where agency failed to consider issues legally relevant to issues at stake, agency's decision may be affirmed only if court is "subjectively certain" that outcome is correct).

Id. at 958 n.8. The court also explained that the harmless-error rule does not apply to agency action that "implicates basic due process rights." Id. at 958 n.6.

The rule of harmless error "is to be used only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached.'" U.S. Steel Corp., 595 F.2d at 215 (quoting Braniff Airways, Inc. v. CAB, 379 F.2d 453, 466 (D.C. Cir. 1967)). In U.S. Steel Corp., 595 F.2d at 210-213, the Environmental Protection Agency ("EPA") had promulgated a rule in March 1978 designating certain areas in Alabama as nonattainment areas for suspended-particulate pollution pursuant to section 107(d) of the Clean Air Act, 42 U.S.C. sec. 7407(d) (2018). Before promulgating the rule, the EPA did not give notice of the rule or give interested parties an opportunity to comment on the rule as it was obligated to do under 5 U.S.C. sec. 553 (2018). U.S. Steel Corp., 595 F.2d at 212-213. The EPA argued that its failure to give notice and an opportunity for comment before making the designations was cured because it had accepted comments from affected parties

for 60 days after the March 1978 promulgation and because it considered these comments in September 1978 when it repromulgated the designations.  Id. at 212-214.  The court rejected the EPA's argument, reasoning that an agency is more likely to give real consideration to comments it receives before promulgating a rule.  Id. at 214-215.  The court held that accepting the EPA's argument would "lead in the long run to depriving parties affected by agency action of any way to enforce their § 553 rights to pre-promulgation notice and comment."  Id. at 215.  Furthermore the court held that the EPA could not "rest on the doctrine of harmless error."  Id.  It held that the doctrine "is to be used only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached.'"  Id. (quoting Braniff Airways, Inc., 379 F.2d at 466).  The court continued:  "Here the Agency's error plainly affected the procedure used, and we cannot assume that there was no prejudice to petitioners.  Absence of such prejudice must be clear for harmless error to be applicable."  Id. (citation omitted).

As explained supra part 2.b, the timing of assessment affects the "procedure used" for collecting a tax liability.  Here we cannot be sure when the assessment of the trust-fund-recovery penalty would have taken place had the IRS made a final administrative determination before the assessment.  Therefore, its error

potentially had a bearing on the "procedure used" for collecting Romano-Murphy's penalty. See id. Furthermore, Romano-Murphy had a right, under the Eleventh Circuit opinion, to a pre-assessment administrative determination of her liability. A pre-assessment determination is fundamentally different from a post-assessment determination. A person seeking a post-assessment determination may be simultaneously dealing with collection actions, such as proposed levies and notices of liens. The harmless-error rule therefore does not apply.[17]

As the Eleventh Circuit opinion observed, Romano-Murphy v. Commissioner, 816 F.3d at 720, even though the IRS did not respond to Romano-Murphy's protest of the trust-fund-recovery penalty by making a final administrative determination, the Office of Appeals eventually reviewed her

---

[17]In its remand report, the IRS contends that it has not yet made a final administrative determination with respect to Romano-Murphy's protest of the assessment of her trust-fund-recovery penalty. (This is the fourth argument the IRS made in its remand report.) Therefore, according to the IRS, the period for assessing the penalty is still open by the operation of sec. 6672(b)(3). Although the IRS did not explain the significance of this point further, we think the IRS means that even if its October 2007 assessment of the penalty were invalid, it can make a final administrative determination in the future and then assess the penalty again. Even if the IRS is right that it can re-assess the penalty in the future, this would not change our view that the first assessment is invalid and the collection actions based upon it should not be upheld. If a future assessment would be valid, then it is the future assessment that should determine the timing of the procedure for collecting the penalty against Romano-Murphy (for example, the start of the 10-year period during which the IRS could take collection actions).

liability for the trust-fund-recovery penalty during the collection-review hearing. The Office of Appeals determined she was liable for the penalty. That her liability was reviewed by the Office of Appeals in its collection-review hearing also suggests that the "procedure used" may have been affected by the IRS's error. See U.S. Steel Corp., 595 F.2d at 215. Had the IRS made a final administrative determination regarding Romano-Murphy's protest, it is possible that the only administrative consideration of her liability would have taken place then--and not at the collection-review hearing in 2009. This is because a taxpayer is not entitled to assert a challenge to the underlying tax liability at a collection-review hearing if the IRS has afforded a prior opportunity to make such a challenge. Sec. 6330(c)(2)(B). Had the IRS made a pre-assessment final administrative determination regarding Romano-Murphy's penalty liability, it could have then taken the position that she had had a prior opportunity to challenge the liability and could not make such a challenge at the collection-review hearing.

In Rosenberg v. Commissioner, 450 F.2d 529, 533 (10th Cir. 1971), aff'g T.C. Memo. 1970-201, the Court of Appeals for the Tenth Circuit appeared to employ harmless-error analysis to excuse the failure of the Office of Appeals to grant a taxpayer's request for a conference. The IRS had sent the taxpayer a notice of deficiency, and then shortly afterwards sent the taxpayer a "30-day letter", a

document inviting the taxpayer to file a protest and request a conference with the Office of Appeals. Id. at 531. Although the taxpayer filed a protest and requested a conference, the Office of Appeals did not afford her a "prelitigation administrative review". Id. She filed a Tax Court petition. Id. The Tax Court sustained the deficiency. Id. In the appeal of that deficiency case, the Court of Appeals for the Tenth Circuit stated that the IRS had violated section 601, Statement of Procedural Rules, in not granting the taxpayer a conference before the Office of Appeals. Rosenberg v. Commissioner, 450 F.2d at 531. However, the court held that section 601, Statement of Procedural Rules, was merely a guideline for internal administration and did not confer rights on the taxpayer. Rosenberg v. Commissioner, 450 F.2d at 533. Additionally, the court observed: "No showing is made as to what, if anything, would have been gained by conference with the Appellate Division. The facts are stipulated. The taxpayer had a full hearing and determination de novo in the Tax Court." Id. This sounds like a harmless-error analysis. Even if it is, Rosenberg is distinguishable because the court did not hold that the taxpayer had a right to be offered a conference with the Office of Appeals. Id. By contrast, the Eleventh Circuit opinion held that Romano-Murphy "was entitled to a pre-assessment determination of her § 6672 liability." Romano-Murphy v. Commissioner, 816 F.3d at 714.

In <u>Ellis v. Commissioner</u>, 346 F. App'x 346, 350-352 (10th Cir. 2009), <u>aff'g</u>

<u>in part, rev'g in part on other grounds</u> T.C. Memo. 2007-207, the court appeared to

employ harmless-error analysis to excuse the failure of the Office of Appeals to

issue a 30-day letter before mailing a notice of deficiency. The court stated that

the failure violated part 601, Statement of Procedural Rules. <u>Ellis v.</u>

<u>Commissioner</u>, 346 F. App'x at 350. However, the court held that part 601,

Statement of Procedural Rules, did not confer rights on a taxpayer. <u>Ellis v.</u>

<u>Commissioner</u>, 346 F. App'x at 351. Furthermore, the court held that the taxpayer

"has failed to show he was prejudiced by the failure to receive * * * a 30-day

letter" because the tax liability was determined by the Tax Court, which sustained

the deficiency. <u>Id.</u> at 351-352. <u>Ellis</u> is distinguishable because the court did not

hold that the taxpayer had a right to a 30-day letter. <u>Id.</u> at 351. By contrast, the

Eleventh Circuit opinion considered that Romano-Murphy was entitled to a pre-

assessment determination of her section 6672 liability. <u>Romano-Murphy v.</u>

<u>Commissioner</u>, 816 F.3d at 714.

In re Vaughn, 2011-2 U.S. Tax Cas. (CCH) para. 50,681, at 87,320 to

87,321, 108 A.F.T.R.2d (RIA) 6847, 2011 Bankr. LEXIS 4438 (E.D.N.C. 2011),

was a case in which the bankruptcy court appeared to employ harmless-error

analysis to excuse the failure of the Office of Appeals to "hear" a taxpayer's

"appeal" of a trust-fund-recovery penalty. On August 24, 2004, the IRS had issued a preliminary penalty notice under section 6672(b)(1) (i.e., a Letter 1153) to Corletta Vaughn, the CEO of a nonprofit organization. In re Vaughn, 2011-2 U.S. Tax Cas. (CCH) at 87,320. On November 4, 2004, the IRS sent Vaughn a corrected preliminary penalty notice. Id. On November 17, 2004, she sent the IRS a protest of the penalty. Id. The protest was timely if the 60-day period for sending the protest is considered to have started with the November 4, 2004 corrected preliminary penalty notice, but untimely if the 60-day period is considered to have started with the August 24, 2004 original preliminary penalty notice. Id. The opinion stated: "[The] IRS deemed the notice untimely under 26 U.S.C. § 6672(b). Despite * * * the IRS deeming the notice untimely, the IRS nevertheless considered Ms. Vaughn's protest." Id. On November 29, 2004, "the IRS denied Ms. Vaughn's protest and referred it to the Service's Appeals Office for review." Id. On February 7, 2006, the Office of Appeals asked Vaughn to agree to extend the assessment period to permit the Office of Appeals additional time to consider the appeal. Id. She did not respond to the request for an extension. Id. On February 23, 2006, the Office of Appeals informed her that her protest had been denied. Id. On March 27, 2006, the IRS assessed a trust-fund-

recovery penalty against her.  Id.  In September 2009, she filed a bankruptcy petition.  Id. at 87,314.

After Vaughn filed for bankruptcy protection, the bankruptcy court had a formal judicial hearing on whether she was liable for the trust-fund-recovery penalty and determined that she was.  Id. at 87,320.  She argued, however, that the penalty was improperly assessed because the Office of Appeals had "refused to hear her administrative appeal".  Id.  She argued that the original preliminary penalty notice issued on August 24, 2004, had been withdrawn, that her protest was timely because it was made within 60 days of the amended preliminary penalty notice, that the period for assessment did not expire until 30 days after the final administrative determination under section 6672(b)(3)(B), and that therefore the Office of Appeals presumably would have had time to consider the protest.  In re Vaughn, 2011-2 U.S. Tax Cas. (CCH) at 87,321.

The bankruptcy court held:

> [Even] if the IRS did not follow its procedures, Ms. Vaughn has not been deprived of any procedural rights.  Ms. Vaughn's remedy for the IRS's failure to follow its procedures, would be to have a hearing to challenge the assessment.  This proceeding, has given Ms. Vaughn the opportunity to challenge the assessment through discovery, pre-trial and post-trial briefs and a formal hearing.

Id. at 87,321 (punctuation as in original). Thus, the bankruptcy court declined to correct any error of the IRS in failing to give a pre-assessment conference regarding a trust-fund-recovery penalty in violation of what the court referred to as "its [i.e., the IRS's] procedures". The court reasoned that the subsequent bankruptcy proceeding afforded Vaughn an opportunity to challenge her liability for the penalty. In re Vaughn is distinguishable because it is not apparent that the court held that the IRS violated the law. By contrast, the Eleventh Circuit opinion stated that the IRS had "violated § 6672(b)". Romano-Murphy v. Commissioner, 816 F.3d at 719.

An instance in which the IRS's refusal to hear an administrative appeal is not fatal to the IRS's collection efforts occurs when the Office of Appeals in a section 6330 proceeding wrongfully refuses to consider a question as to the existence or amount of the underlying tax liability. When that occurs, the Tax Court (in the appeal from the determination of the Office of Appeals) determines the existence or amount of the underlying tax liability itself. See, e.g., Obiakor v. Commissioner, T.C. Memo. 2015-112, at *4, *16, *18-*20 (Tax Court heard challenges to existence and amount of liability for trust-fund-recovery penalty in collection-review case where taxpayer did not receive properly mailed Letter 1153 and Office of Appeals improperly did not consider challenges). This scenario is

distinguishable because the collection-review hearing with the Office of Appeals under section 6330 is not a precondition to assessment. The hearing takes place after assessment. By contrast the final administrative determination regarding a timely protest of the trust-fund-recovery penalty is a precondition for assessing that penalty, according to the Eleventh Circuit opinion. Romano-Murphy v. Commissioner, 816 F.3d at 718.

R.R. Concrete Crosstie Corp., a case discussed in the Eleventh Circuit opinion, is also distinguishable. In that case, the Railroad Concrete Crosstie Corp. challenged a decision by the Railroad Retirement Board classifying it as an employer. R.R. Concrete Crosstie Corp., 709 F.2d at 1406. Title 20 C.F.R. sec. 258.6(a) (2018) provides that when the Board has designated an examiner to conduct a hearing with respect to a matter before the Board, the examiner will preside over the hearing. Upon conclusion of the proceedings before him or her, the examiner will submit to the Board a report recommending a decision. Id. The report is advisory only and may be adopted or rejected by the Board in making its decision. 20 C.F.R. sec. 258.6(d). Before the Board had issued its decision regarding the Railroad Concrete Crosstie Corp., the Board had first appointed an examiner to hear the case. R.R. Concrete Crosstie Corp., 709 F.2d at 1407 n.3. However, the corporation waived any hearing and the examiner never issued a

report.  Id.  The corporation contended that the examiner's failure to issue a report

violated 20 C.F.R. sec. 258.6.  R.R. Concrete Crosstie Corp., 709 F.2d at 1407 n.3.

The court held that the examiner's failure to issue a report was harmless.  Id.

The case is distinguishable.  For one thing, R.R. Concrete Crosstie Corp.

suggested that the requirement that the examiner issue a report was not mandatory.

Id. (stating that examiner's failure to issue report was harmless because Board's

initial decision to appoint examiner was not mandatory, but discretionary).  In our

case, by contrast, the Eleventh Circuit held that it was mandatory for the IRS to

make a final administrative determination regarding Romano-Murphy's protest.

Romano-Murphy Commissioner, 816 F.3d at 714 ("Ms. Romano-Murphy was

entitled to a pre-assessment determination of her § 6672 liability.").

Howell, a case discussed in the Eleventh Circuit opinion, is also

distinguishable.  In Howell, 164 F.3d at 524, the IRS assessed the trust-fund-

recovery penalty against Ronald Howell.  Howell then requested from the IRS a

copy of the record of assessment.  Id. at 525.  Section 6203 provides:  "Upon the

request of the taxpayer, the Secretary [of the Treasury] shall furnish the taxpayer a

copy of the record of assessment."  Section 301.6203-1, Proced. & Admin. Regs.,

further provides:  "If the taxpayer requests a copy of the record of assessment, he

shall be furnished a copy of the pertinent parts of the assessment which set forth

the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." In a proceeding in U.S. District Court regarding the penalty, Howell had argued that the information the IRS gave him in response to his request for a copy of the assessment was indecipherable to a layperson. Howell, 164 F.3d at 525 n.2. The District Court held that the assessment was invalid because the IRS did not provide a copy of the record of assessment upon request. Id. at 524-525. The District Court held that the information given to him was indeed indecipherable to a layperson as to the character of the liability assessed and the date of assessment. Id. at 525 n.2.

But the Court of Appeals for the Tenth Circuit reversed, holding that "any failure by the IRS to comply with its duty to provide the information * * * did not render the assessment in this case invalid." Id. at 526. It reasoned that section 6203 does not suggest that the validity of the assessment is affected by the failure of the IRS to furnish a copy of the record of assessment. Id.

Howell is distinguishable. The Eleventh Circuit opinion in our case held that the Internal Revenue Code required the IRS to make a final administrative determination as a precondition of making an assessment. Romano-Murphy v. Commissioner, 816 F.3d at 718. Such a requirement means that making an

assessment without a final administrative determination is premature and, as we have explained, invalid.

Another case referred to by the Eleventh Circuit opinion is Philadelphia & Reading Corp., 676 F.2d at 1164. See Romano-Murphy v. Commissioner, 816 F.3d at 720. In that case the IRS had completed an audit of the taxpayer's returns for five tax years. Phila. & Reading Corp., 676 F.2d at 1161. The results of the audit were as follows: (1) for three of the years there were deficiencies totaling over $10.5 million and (2) for two of the years there were overpayments totaling almost $6.5 million. Id. Thus over all five tax years there was a net deficiency of over $4 million (i.e., $10.5 million minus $6.5 million). Id. The taxpayer and the IRS reached a conditional closing agreement whereby they agreed to the correctness of the deficiencies and overpayments and the taxpayer agreed to waive the statutory requirement that the IRS issue a notice of deficiency before assessing the $10.5 million of deficiencies. Id.; sec. 6213(a). The closing agreement was conditional on an IRS official's signing a schedule authorizing the overpayments. Phila. & Reading Corp., 676 F.2d at 116. Thus, the closing agreement was drafted such that the IRS could back out. The relevant IRS official could decline to sign the overpayment schedule, and then the IRS would have to issue a notice of deficiency for the three deficiency years (if it wanted to assess the deficiencies),

thus allowing the taxpayer to challenge the deficiencies in the Tax Court. Id.; sec. 6213(a).

In June 1973, without sending a notice of deficiency and before its official signed the overpayment schedule, the IRS assessed the $10.5 million in deficiencies. Phila. & Reading Corp., 676 F.2d at 1162. In August 1973, the IRS official signed the overpayment schedule for the first overpayment year. Id. at 1161. In October 1973, the IRS official signed the overpayment schedule for the second overpayment year. Id. at 1161. The IRS then demanded the taxpayer pay the $4 million net deficiency. Id. at 1163. The taxpayer filed an injunction suit against the IRS under section 6213(a) (giving the Tax Court the power to enjoin an assessment of a deficiency made before the mailing of a notice of deficiency). The taxpayer contended that the entire June 1973 assessment was premature because the IRS had not then signed the overpayment schedule (and therefore had not yet fulfilled the conditions of the waiver of the requirement that the IRS mail a notice of deficiency before assessing a deficiency) and had failed to issue a notice of deficiency with respect to the three deficiency years. Phila. & Reading Corp., 676 F.2d at 1163. The District Court enjoined the IRS from collecting deficiencies in excess of the $4 million net deficiency. Id. at 1164. The taxpayer

appealed, arguing that the District Court should have enjoined the collection of the entire $10.5 million of deficiencies.  Id. at 1163.

The Court of Appeals held that although the assessment of the $10.5 million of deficiencies was premature and invalid, the District Court was correct in refusing to enter an injunction against the collection of the $10.5 million assessment.  Id. at 1163-1164.  The court reasoned that, under traditional rules of equity, an injunction is available only if the person seeking it shows irreparable harm will occur if the injunction does not issue.  Id. at 1163; see also Lovell v. United States, 795 F.2d 976, 977-978 (11th Cir. 1986) (same).  The court held that the failure of the IRS to issue a notice of deficiency did not harm the taxpayer because the taxpayer had no interest in contesting the deficiencies in Tax Court. Phila. & Reading Corp., 676 F.2d at 1163.  Philadelphia & Reading Corp. is distinguishable because there the District Court was exercising its power to issue an injunction.  In this case the Tax Court is reviewing an administrative determination of the IRS Office of Appeals under section 6330(d).

The Eleventh Circuit opinion cited Gonzales, 212 F.3d at 1349, for the principles that (1) agencies must comply with procedural requirements imposed by statute and (2) agencies must respect their own procedural rules and regulations. Romano-Murphy v. Commissioner, 816 F.3d at 720.  In Gonzales, 212 F.3d at

1349-1351, the Court of Appeals for the Eleventh Circuit held that <u>Chevron</u> deference was owed to the Immigration and Naturalization Service's policy for determining the validity of asylum applications by foreign minors. In discussing the principle of <u>Chevron</u> deference, the court observed:

> That the courts owe some deference to executive policy does not mean that the executive branch has unbridled discretion in creating and in implementing policy. Executive agencies must comply with the procedural requirements imposed by statute. <u>See</u> <u>Morton v. Ruiz</u>, 415 U.S. 199, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974). Agencies must respect their own procedural rules and regulations. <u>See</u> <u>id.</u> at 1074; <u>see also</u> <u>Hall v. Schweiker</u>, 660 F.2d 116, 119 (5th Cir. 1981).

<u>Gonzales</u>, 212 F.3d at 1349. This is the passage cited in <u>Romano-Murphy v. Commissioner</u>, 816 F.3d at 720. We need not consider the application of these principles to this case because, even without applying them, we conclude that the assessment of the trust-fund-recovery penalty is invalid and that the Office of Appeals erred in upholding a proposed levy and a filing of tax lien to collect the penalty.

In <u>Romano-Murphy v. Commissioner</u>, 816 F.3d at 720, the Eleventh Circuit cited <u>Powell</u>, 945 F.2d at 378, for the proposition that the IRS may not treat two similarly situated taxpayers differently. In <u>Powell</u>, 945 F.2d at 375, the taxpayer made payments to the Church of Scientology in exchange for religious benefits.

The taxpayer alleged that because the IRS permitted taxpayers of other religions to deduct payments in exchange for religious benefits, he was entitled to a deduction for his payments to the Church of Scientology. Id. at 376. For the purpose of evaluating the government's motion to dismiss the lawsuit for failing to state a claim upon which relief could be granted, Powell assumed to be true the taxpayer's allegation that the IRS permitted taxpayers of other religions to deduct payments in exchange for religious benefits. Id. at 377 ("[W]e must assume that individuals in other religions are permitted deductions for quid pro quo payments."). Powell stated that under that assumption, the taxpayer would be entitled to a deduction. Id. at 378. It reasoned: "The IRS is not allowed to treat two similarly situated taxpayers differently." Id.

Powell, 945 F.2d at 378, distinguished Mid-Continent Supply Co. v. Commissioner, 571 F.2d 1371, 1376 (5th Cir. 1978), aff'g 67 T.C. 37 (1976), in which the Court of Appeals for the Fifth Circuit held that a taxpayer has no right to the same erroneous treatment afforded to a similarly situated taxpayer. Powell, 945 F.2d at 378, held that the deductions granted to taxpayers of other religions had not been established to be erroneous. It is difficult to see how the facts in Powell can be analogized to those of this case. While it may be that the IRS has made administrative determinations in response to Letters 1153 submitted by

persons similarly situated to Romano-Murphy, it has not been established that the IRS has issued favorable determinations to these taxpayers that were not erroneous. See id.[18] And as for the general principle stated by Powell, 945 F.2d at 378,--"The IRS is not allowed to treat two similarly situated taxpayers differently"--the Court of Appeals for the Eleventh Circuit in Baker v. United States, 748 F.2d 1465, 1469 n.9 (11th Cir. 1984), acknowledged that the principle of equal treatment of taxpayers does not govern all situations. In any event, even without considering the principle of equal treatment, we conclude that the assessment of the trust-fund-recovery penalty is invalid and that the Office of Appeals erred in upholding a proposed levy and a filing of tax lien to collect the penalty.

Finally, we explain why we did not have an evidentiary hearing, as part of this remand proceeding, to gather evidence on the question of whether Romano-Murphy was specifically harmed by the IRS by the error identified by the Eleventh Circuit opinion. The Eleventh Circuit's opinion did not specifically direct us to

---

[18]In other words, if the IRS had made a determination that a person similarly situated to Romano-Murphy was not liable for a trust-fund-recovery penalty, and if this determination was erroneous, then Romano-Murphy cannot rely on this determination because in the words of Mid-Continent Supply Co. v. Commissioner, 571 F.2d 1371, 1376 (5th Cir. 1978), aff'g 67 T.C. 37 (1976), "a taxpayer has no right to insist upon the same erroneous treatment afforded a similarly situated taxpayer in the past."

hold an evidentiary hearing on remand. Thus, the question of whether to hold a hearing is left to our discretion. Neither the IRS nor Romano-Murphy requested that the Court hold an evidentiary hearing when they filed reports stating their views as to what action the Court should take on remand. In our view, an evidentiary hearing is unnecessary. The error identified by the Eleventh Circuit opinion is the type of error that should be judicially corrected even if Romano-Murphy did not suffer some specific harm. Thus it is not necessary to determine the existence or degree of the specific harm.

        d.     <u>Summary</u>

The Eleventh Circuit opinion held that the Internal Revenue Code commands that a final administrative determination with respect to a timely protest be made before assessment of the trust-fund-recovery penalty. <u>Romano-Murphy v. Commissioner</u>, 816 F.3d at 714-716. Under the law of the Eleventh Circuit, the IRS handled Romano-Murphy's case contrary to the command of Congress. In analogous circumstances we have held that the assessment was invalid and that the Office of Appeals erred in upholding the collection action. <u>Freije v. Commissioner</u>, 125 T.C. at 35-37. That is the appropriate disposition of this case. An order and decision will be entered that the notice of determination by the IRS Office of Appeals is not sustained.

3.  Romano-Murphy's request for an injunction under section 6330(e)(1)

During our consideration of this case on remand, Romano-Murphy filed a

motion seeking an injunction against further actions by the IRS to collect the

penalty.  Section 6330(e)(1) provides that when a taxpayer requests a collection-

review hearing, "the levy actions which are the subject of the requested hearing

* * * shall be suspended for the period during which such hearing, and appeals

therein, are pending."  Section 6330(e)(1) also provides:

> [T]he beginning of a levy or proceeding during the time the
> suspension under this paragraph is in force may be enjoined by a
> proceeding in the proper court, including the Tax Court.  The Tax
> Court shall have no jurisdiction under this paragraph to enjoin any
> action or proceeding unless a timely appeal has been filed under
> subsection (d)(1) [allowing a person dissatisfied with the
> determination of the Office of Appeals after a collection-review
> hearing to appeal the determination to the Tax Court] and then only in
> respect of the unpaid tax or proposed levy to which the determination
> being appealed relates.

The background of Romano-Murphy's request for an injunction is as follows.

Romano-Murphy mailed her request for a collection-review hearing on

September 9, 2008.  The Office of Appeals received her request three days later

on, September 12, 2008.  On that same day the IRS made a "litigation freeze"

notation in its records as to Romano-Murphy's liability for the trust-fund-recovery

penalty.  On February 24, 2009, the Office of Appeals held a conference with

Romano-Murphy as part of its collection-review hearing; on October 29, 2009, it issued its summary notice of determination; and on November 20, 2009, it issued its final notice of determination. Romano-Murphy appealed to this Court. We issued our opinion on November 29, 2012. Romano-Murphy v. Commissioner, T.C. Memo. 2012-330. We entered the decision on December 13, 2012. Romano-Murphy appealed the decision to the Court of Appeals for the Eleventh Circuit.

The Eleventh Circuit issued an opinion on March 7, 2016, vacating our decision. Romano-Murphy v. Commissioner, 816 F.3d 707. The Eleventh Circuit opinion, together with a judgment entered by the Eleventh Circuit on that same day, constitutes the mandate of the Eleventh Circuit. See Fed. R. App. P. 41(a) (providing that unless the Court of Appeals directs that a formal mandate issue, the mandate consists of a copy of the judgment and a copy of the opinion). The mandate is functionally the direction that the lower court must follow. 3 Moore's Manual--Federal Practice & Procedure, sec. 28.94[1] (2004) ("A mandate is the appellate court's order to the lower court following the determination of the appeal.").

The date the mandate issues is the date the lower court may resume taking actions in the case. Zaklama v. Mount Sinai Med. Ctr., 906 F.2d 645, 649 (11th Cir. 1990) (holding that District Court generally is without jurisdiction to rule in

case on appeal until mandate has issued); <u>Ostrer v. United States</u>, 584 F.2d 594, 598 (2d Cir. 1978) ("The effect of the mandate is to bring the proceedings in a case on appeal in our Court to a close and remove it from the jurisdiction of this Court, returning it to the forum whence it came."). The Eleventh Circuit's mandate issued on April 29, 2016.[19] Thus, on that day the Tax Court regained jurisdiction over the case. The judicial appeal from the collection-review hearing was still pending and therefore levy actions by the IRS were still statutorily suspended under section 6330(e)(1). Despite this, on June 15, 2016, the IRS removed the "litigation freeze" notation it had made in its records on September 12, 2008. And on May 8, 2017, the IRS issued to Romano-Murphy a notice of intent to levy on her property to collect the second-quarter 2005 trust-fund-recovery penalty. The letter stated:

> This is a notice of intent to levy your * * * property. * * * If you don't call us immediately to make payment arrangements or pay the

[19]The judgment was entered on March 7, 2016. The deadline for filing a petition for rehearing was 45 days later, on April 22, 2016. <u>See</u> Fed. R. App. P. 40(a)(1) (providing that in a civil case in which one of the parties is the United States, unless an order shortens or extends the time, the petition for panel rehearing may be filed within 45 days after entry of judgment), <u>id.</u> R. 35(c) (providing that a petition for rehearing en banc must be filed within the time prescribed by rule 40 for filing a petition for panel rehearing). The mandate issued seven days after that, on April 29, 2016. <u>See id.</u> R. 41(b) (providing that the mandate generally must issue seven days after the time to file a petition for rehearing expires).

> amount due, we may levy your property or rights to property and apply it to the $317,976.88 you owe.

The notice stated that it satisfied the requirement of section 6331(d). Section 6331(d)(1) provides: "Levy may be made * * * upon the salary or wages or other property of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy."

On May 15, 2017, Romano-Murphy filed her motion asking this Court to restrain the IRS from collection activities.[20] Upon receiving a copy of her motion, the IRS requested that the Office of Appeals re-establish the "litigation freeze" notation. By May 24, 2017, the IRS's internal records showed that the "litigation freeze" notation had been re-established.

The Court has the authority to enjoin a levy during the pendency of the collection-review hearing at the IRS Office of Appeals and during the pendency of the judicial proceedings to review the Office's determinations from the hearing.[21] However, we are not convinced that an injunction is justified merely by the issuance of a notice of proposed levy such as the May 8, 2017 notice issued by the

---

[20]She cited as authority sec. 6213.

[21]The authority to make such an injunction comes from sec. 6330(e)(1), not sec. 6213, the provision Romano-Murphy cited. The authority of the Court to enjoin a levy is conditional upon the taxpayer's filing a timely appeal under sec. 6330(d)(1). Sec. 6330(e)(1) (last sentence).

IRS to Romano-Murphy.  See Springer v. IRS ex rel. United States, 231 F. App'x 793, 798 (10th Cir. 2007) (holding that notice of intent to levy does not justify injunction under section 6330(e)(1)); see also Hart v. United States, 291 F. Supp. 2d 635, 645 (N.D. Ohio 2003).  Although Romano-Murphy alleged that the IRS engaged in other collection activities besides the notice of proposed levy, the only proof of other collection activities she submitted was a copy of an April 3, 2017 letter from the IRS that merely requested payment of the penalty.  And even if an injunction could be justified by the mere issuance of a notice of proposed levy, an injunction is not necessary in this case for two reasons:  (1) the IRS has re-established a "litigation freeze" notation to stop its collection activities, see Humphries v. IRS, 2010-2 U.S. Tax Cas. (CCH) para. 50,583, at 85,500 (S.D. Fla. 2010) (holding injunction unnecessary, despite IRS bank levy allegedly violating section 6330, because IRS did not intend to issue any new levies), and (2) we are entering a decision in this case in which we do not sustain the Office of Appeals determination to uphold the levy proposed to collect the trust-fund-recovery penalty.  Because an injunction is not necessary, we will deny Romano-Murphy's May 15, 2017 motion to restrain the IRS from collection activities.

4. <u>Jurisdiction</u>

On July 31, 2018, we issued an order concerning the timing of Romano-Murphy's petition in this case. Observing that the petition preceded the final notice of determination, we ordered the parties to explain why, despite this fact, the Court has jurisdiction over the case. In response to the order, Romano-Murphy and the IRS both took the position that the Tax Court has jurisdiction. They postulated that the summary notice of determination, which preceded the petition, was the "determination" of the Office of Appeals for purposes of section 6330(d)(1), which allows a taxpayer to petition the Tax Court within 30 days of "a determination" under section 6330. Under the particular circumstances of this case, we agree with this proposition.

The Tax Court is a court of limited jurisdiction, and the Court may exercise jurisdiction only to the extent authorized by Congress. <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985). Section 6330(c)(3) sets forth the issues that must be considered by the Office of Appeals in making its "determination" after a collection-review hearing. Section 6330(d)(1) provides that the taxpayer may, within 30 days of the determination, file a Tax Court petition for review of the determination and that the Tax Court has jurisdiction "with respect to such matter". The Tax Court's jurisdiction under section 6330 depends on the issuance

of a notice of determination and the filing by the taxpayer of a timely petition. Sec. 6330(d)(1); see Sarrell v. Commissioner, 117 T.C. 122, 125 (2001). On November 17, 2009, Romano-Murphy filed a petition with this Court and attached a copy of the summary notice of determination dated October 29, 2009. Although the petition was filed before the November 20, 2009 final notice of determination, the summary notice of determination is a valid determination under section 6330(d) for purposes of determining the timeliness of the petition under the facts of this case.

By way of background, the IRS informs us that it issued the summary notice of determination in error. It states that pursuant to IRS procedures, a summary notice of determination is issued "to a taxpayer who has reached an agreement with Appeals on the resolution of a case and has agreed to waive its right to judicial review." According to the IRS, the Office of Appeals should not have issued the Form 12257 to Romano-Murphy because no agreement had been reached between her and the Office of Appeals. Therefore, the IRS states, the Office of Appeals did not follow IRS procedures when it issued the summary notice of determination to her on October 29, 2009. The IRS states that instead of mailing a summary notice of determination on that date, the Office of Appeals should have mailed Romano-Murphy a notice of determination.

In spite of this error, the summary notice of determination in this case is a determination for purposes of section 6330(d) because the notice meets all of the requirements of a valid notice of determination as set forth in the regulations under section 6330. As contemplated by section 6330(c)(3), the summary notice of determination was issued at the conclusion of the collection-review hearing provided by the Office of Appeals after Romano-Murphy submitted timely hearing requests. On August 25 and September 5, 2008, the Office of Appeals mailed to Romano-Murphy the required notices under sections 6320 and 6330 regarding her right to request a collection-review hearing. On September 9, 2008, she mailed to the IRS a timely request for a collection-review hearing. On February 24, 2009, the IRS Office of Appeals conducted a face-to-face hearing with her. At the hearing, the Appeals Officer reviewed the issues she raised and determined that she was liable for the trust-fund-recovery penalty for the taxable period at issue. Moreover, the summary notice of determination mailed to her on October 29, 2009, met the requirements to be considered a valid determination under section 301.6330-1(e)(3), Proced. & Admin. Regs. The description of a notice of determination is found in section 301.6330-1(e)(3), Q&A-E8(i), Proced. & Admin. Regs., which provides:

> Q-E8. How will Appeals issue its determination?

A-E8. (i) Taxpayers will be sent a dated Notice of Determination by certified or registered mail. The Notice of Determination will set forth Appeals' findings and decisions. It will state whether the IRS met the requirements of any applicable law or administrative procedure; it will resolve any issues appropriately raised by the taxpayer relating to the unpaid tax; it will include a decision on any appropriate spousal defenses raised by the taxpayer; it will include a decision on any challenges made by the taxpayer to the appropriate-ness of the collection action; it will respond to any offers by the taxpayer for collection alternatives; and it will address whether the proposed collection action represents a balance between the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. The Notice of Determination will also set forth any agreements that Appeals reached with the taxpayer, any relief given the taxpayer, and any actions the taxpayer or the IRS are required to take. Lastly, the Notice of Determination will advise the taxpayer of the taxpayer's right to seek judicial review within 30 days of the date of the Notice of Determination.

See also sec. 301.6320-1(e)(3), Q&A-E8(i), Proced. & Admin. Regs.

Like the final notice of determination issued three weeks later, the summary notice of determination set forth the Office of Appeals' findings and decision to proceed with collection of the liability at issue. The summary notice of determination stated that the IRS had met the requirements of any applicable law or administrative procedure. It addressed the issues appropriately raised by Romano-Murphy, including her challenge to the trust-fund-recovery-penalty liability. The summary notice of determination stated that after the face-to-face hearing, the Appeals Officer determined that the trust-fund-recovery penalty was

appropriate. Finally, the summary notice of determination stated that the Appeals Officer's determination--that the proposed collection action represented a balance between the need for the efficient collection of taxes and Romano-Murphy's legitimate concern that any collection action be no more intrusive than necessary-- was proper. In addition, the summary notice of determination stated: "I understand that IRC Sections 6320 and 6330 require the Office of Appeals to issue a Notice of Determination after a CDP Hearing. Those sections also allow me 30 days to file a lawsuit with the appropriate court if I disagree with Appeals' determination." As evidenced by Romano-Murphy's filing of a petition after receiving the summary notice of determination, she interpreted the summary notice of determination as her right to seek judicial review within 30 days of the date of its issuance.

The Court has jurisdiction to decide this case. We explained in Andre v. Commissioner, 127 T.C. 68, 70 (2006): "[I]f a taxpayer makes a timely request for a CDP hearing, but the Commissioner sends him something other than a notice of determination at its conclusion, we don't just say 'no notice of determination, no jurisdiction', but we look to see whether what the IRS sent out should be treated as a notice of determination." For this proposition we cited Craig v. Commissioner, 119 T.C. 252, 258-259 (2002), which stated:

> Although the Appeals officer concludes an equivalent hearing by issuing a decision letter, as opposed to a notice of determination, the different names which are assigned to these documents are merely a distinction without a difference when it comes to our jurisdiction over this case, where a Hearing was timely requested. The decision letter contains all of the information required by section 301.6330-1(e)(3), Q&A-E8, Proced. & Admin. Regs., to be included in a notice of determination but for the fact that the decision letter ordinarily states in regard to most issues that a taxpayer may not (as opposed to may) seek judicial review of the decision. * * * [Fn. ref. omitted.]

In Ballard v. Commissioner, T.C. Memo. 2007-159, aff'd, 310 F. App'x 177 (9th Cir. 2009), the taxpayer contended that IRS Letter 2081(CG) constituted a valid notice of determination that conferred jurisdiction on the Court under section 6330. The Court disagreed because none of the events described in section 6330 that lead to a determination over which the Court has jurisdiction had occurred. The taxpayer had not received a notice of a right to a hearing, there had been no timely request for a hearing, and there had been no determination with respect to the hearing or request for hearing as required under section 6330. The Letter 2081(CG) did not meet the description of a notice of determination found under section 301.6330-1(e)(3), Proced. & Admin. Regs. By contrast, the record in Romano-Murphy establishes that a notice of a right to a collection-review hearing, a timely request for a collection-review hearing, and a determination with respect to the hearing or request for hearing as required by sections 6320 and 6330 had

occurred.  All of these findings and decisions were set forth in the summary notice of determination.  Therefore, the Court has jurisdiction to decide this case.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.